[Civ. No. 838.    Third Appellate District.—April 22, 1911.]

GUSTAVE ALLSTEAD, Respondent, v. ELIZABETH LAUMEISTER, Appellant.

ACTION TO ENFORCE TRUST—PURCHASE OF LAND IN SON'S NAME—INTENT TO DEFRAUD JUDGMENT CREDITOR—FINDINGS—UNSUPPORTED JUDGMENT—REVERSAL.—In an action to enforce a trust against the grantee of a son in whose name the plaintiff, as his father, took purchased property, with intent to defraud his judgment creditor, with an agreement that the son should reconvey upon demand, but the son conveyed the same to his foster mother without consideration, under the same promise made to the son, where the court found for plaintiff, and by its judgment enforced the trust against the son's grantee, but also found upon sufficient evidence that the deed

was made to the son with the intent to defraud such judgment creditor, such finding shows that the action was untenable, and the judgment is unsupported, and must be reversed.

ID.—APPLICABLE MAXIM—BAD CAUSE OF ACTION—AGREEMENT NOT ENFORCEABLE.—It is evident from the testimony and the findings based thereon that the agreement between the plaintiff and his son with respect to the land taken in the son's name comes within the maxim, *"Ex turpi causa non oritur actio,"* and cannot be sustained or executed at suit of the plaintiff, without a clear violation of the fundamental principles of equity jurisprudence.

ID.—CLEAN HANDS REQUIRED OF PLAINTIFF IN EQUITY—CONDUCT OF DEFENDANT NOT RELIEVING UNCONSCIENTIOUSNESS OF PLAINTIFF.—He who comes into equity as a plaintiff must come with clean hands. The plaintiff's conduct in making the deed to his son, with agreement for a deed to him on demand, having been conceived and founded in the intent to defraud his judgment creditor, there was nothing that either the son or his grantee might do with the property conveyed that could relieve plaintiff from the consequences of his unconscientious part in the transaction.

ID.—DEFENDANT IN PARI DELICTO NOT RELIEVING PLAINTIFF.—The fact that the son and his grantee stood *in pari delicto* with reference to the concealment of the fraudulent intent of the plaintiff is immaterial, and cannot relieve the plaintiff in equity, so long as no affirmative relief is sought by the defendant, who is merely defending against the untenable action of the plaintiff by pleading his intent to defraud his creditors.

ID.—TRUST CREATED FOR FRAUDULENT PURPOSE NOT PROVABLE.—Courts will not allow a trust to be proven by a party to the fraud, if it was created for a fraudulent purpose.

ID.—SUFFERING OF PLAINTIFF FROM PERFIDY OF TRUSTEE—PERFIDY OF PLAINTIFF—POWERLESSNESS OF EQUITY.—If the plaintiff may claim that he has suffered through the perfidy of his trustee, his creditors may likewise say that they have suffered through his perfidy. But, in any event, a court of equity can neither lend its aid to the consummation of his fraud nor to relieve him from the results thereof, though one not entitled thereto may reap its fruits.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

F. J. Castelhun, and Walter J. Thompson, for Appellant.

James H. Boyer, for Respondent.

HART, J.—This action was brought to obtain a decree de-claring certain real estate, situated in the city of San Fran-cisco, to be held in trust by defendant for the plaintiff, and to compel said defendant to execute ''a good and sufficient deed transferring and conveying to plaintiff said property.''

Plaintiff was awarded judgment as prayed for, and this appeal is prosecuted therefrom under the alternative method of taking such appeals prescribed by sections 941a, 941b, 953a, 953b and 953c of the Code of Civil Procedure.

The facts as alleged in the complaint and as proved by the evidence from which the findings of the court were made may be stated as follows: On the thirty-first day of May, 1905, plaintiff purchased from William and Elise Marshall, his wife, a certain lot in the city of San Francisco and caused the deed thereto to be executed by said Marshalls to his son, Van C. Allstead, then a minor, of the age of about twenty years; that plaintiff paid to said Marshalls the entire con-sideration supporting the transfer of said property; that, on said thirty-first day of May, 1905, said Van C. Allstead ''agreed with and promised plaintiff that he would reconvey to plaintiff said real property at any time upon request of plaintiff''; that on the twentieth day of January, 1906, said Van C. Allstead conveyed said property to the defendant, Elizabeth Laumeister, and it is charged in the complaint that said conveyance was brought about without the knowl-edge, acquiescence or consent of plaintiff, and through the act of said defendant in fraudulently representing to said Van C. Allstead that ''it was the will and desire of plaintiff that said Van C. Allstead transfer and convey said property to said Elizabeth Laumeister to be by her held in trust for said plaintiff, and by her reconveyed to plaintiff on demand.'' The complaint further states that said Van C. Allstead, for some six months prior to the date of the transfer of said prop-erty to said defendant, had resided with the latter at her home in San Francisco, and that ''said Van C. Allstead and Eliza-beth Laumeister during said time bore the relation to each other of foster mother and child; and during all of said time said Van C. Allstead reposed great trust and confidence in said Elizabeth Laumeister''; that by reason of the confidence and trust so reposed in said Laumeister by said Van Allstead,

and relying upon and believing in "said false and fraudulent statements of said Elizabeth Laumeister," said Van Allstead, on the date heretofore mentioned, conveyed, by grant deed, said property to said Laumeister, without the knowledge, acquiescence or consent of plaintiff. The complaint further charges that the transfer to defendant of said property by said Van Allstead was without any consideration whatever, and that the sole purpose of said defendant in thus fraudulently obtaining a deed and title to said property was to cheat and defraud plaintiff out of his equitable title to the same, and without any intent on her part to reconvey said property to plaintiff. On the first day of June, 1906, it is alleged, plaintiff demanded of defendant that she reconvey said property to plaintiff, but that defendant then, and has ever since, refused to convey said property to said plaintiff.

The answer specifically denies all the material averments of the complaint, and, additionally, sets up several special defenses, of which, except the one that follows, we deem it unnecessary, under our view of the case, to take special or any notice: "That at the time said plaintiff caused said William Marshall and wife to execute and deliver to plaintiff a grant deed of the premises in the complaint described to Van C. Allstead said plaintiff was indebted to various persons in divers sums of money, and that said plaintiff caused said deed from said William Marshall and wife to be made to said Van C. Allstead for the purpose and with the intent to hinder, delay and defraud the creditors of said plaintiff, of all which said Van C. Allstead had knowledge."

The court's findings are in favor of plaintiff on all the material issues, except the one responding to the foregoing allegation of the answer, and except, further, that the court does not find that the defendant, as alleged in the complaint, procured Van C. Allstead to execute a transfer of the property to her by misrepresentation and fraud.

Several of the important findings of the court, essential to the support of the judgment, if the judgment could be upheld at all, are assailed by the appellant; but an examination of the record will disclose that all the findings derive sufficient support from the evidence, much, it may here be stated, to the disadvantage of the judgment in favor of the plaintiff; for the court found, upon the testimony of both the plaintiff

and Van C. Allstead, as follows: "On and prior to May 31, 1905, plaintiff was indebted to the Mission Loan and Home Association of San Francisco upon a deficiency judgment made and entered in favor of said association and against said plaintiff; that on said thirty-first day of May, 1905, said plaintiff purchased said real property of and from said William Marshall and Elise Marshall, and thereupon caused said William Marshall and Elise Marshall to execute and deliver to plaintiff a grant deed transferring and conveying the legal title to said property to Van C. Allstead, who was then and there the minor child of said plaintiff, *to conceal the fact of his ownership of said property from said association.*"

In support of the foregoing findings, the record discloses the following testimony given by plaintiff: "I paid $300, cash for the lot. . . . Had a conversation with my son, Van C. Allstead, immediately prior to the purchase of this property, relative to its purchase. . . . I told him I had a show to buy a nice, cheap piece of property, and I thought I would take it, but I would make the deed in his name, as I had a little financial difficulty so I couldn't hold it myself. . . . There was a deficiency judgment lien against me. They had sold my place on a mortgage and didn't get enough for it, and they had a deficiency judgment against me."

Van C. Allstead testified: "Had a conversation with my father relative to the property in 1905, a few days before he purchased it. . . . Well, he said, 'Van, I am going to buy a piece of property; I got a good piece of property that I am going to purchase; I am going to have the Marshalls deed it over to you; I can't keep anything in my own name, as they are apt to take it away from me'; he said, 'I am going to make this deed over to you, and I want you to give it back to me any time I want it,' and I said, 'All right, you can have it.' "

It is plainly evident, from the foregoing testimony and the findings educed therefrom, that the agreement between the plaintiff and his son, with respect to the property in controversy, comes within the maxim, "*Ex turpi causa non oritur actio,*" and cannot be sustained or executed at the suit of plaintiff, without a clear violation of the fundamental conceptions of equity jurisprudence. (Pomeroy's Equity Jurisprudence, sec. 397.) That author, in the same section, thus

states the rule as to the application of the equitable maxim, "He who comes into equity must come with clean hands": "It says that whenever a party, who, as *actor*, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." As seen, the court did not find that the defendant procured the execution of the deed to her by Van Allstead by misrepresentation and fraud, as charged in the complaint, and it may be remarked that, so far as plaintiff is concerned, it would make no difference whether the court had so found. The plaintiff's conduct in making the arrangement with his son for a conveyance of the property to him whenever he might demand it was conceived and founded in fraud—in an intent to defraud creditors—and there was nothing that either the son or third parties might do with respect to the property or its disposition that could relieve him from the consequences of his unconscientious part in the transaction.

The court, however, found as follows with reference to the transfer of the property by Van Allstead to defendant: "That thereafter, and on the twentieth day of January, 1906, at said city and county of San Francisco, said Van C. Allstead conveyed said property to Elizabeth Laumeister, to be by her held in trust for said plaintiff, and by her reconveyed to plaintiff on demand."

Thus it will be observed that the transaction between the defendant and Van Allstead merely resulted in transferring to her shoulders the obligations of the trust created by the plaintiff and accepted by his son. The son testified that he well knew and understood the purpose for which the plaintiff had the property put in his name. He knew the purpose of the trust was to defraud the creditors of the trustor, and under those circumstances and to aid the trustor in perpetrating the fraud he accepted the trust. The defendant having assumed the obligations of the trust—that is, having, according to the finding on that proposition, taken the property upon an agreement to execute the terms of the trust according to their original tenor—took the legal title for the purpose of executing such trust with all the infirmities characterizing said

trust from its very inception. It may be true that, although Van Allstead stood *in pari delicto* to the fraud, the defendant would not sustain that relation thereto unless she accepted the trust with notice or knowledge of its fraudulent character or that its purpose was to defraud third parties; still, nevertheless, the transaction between plaintiff and his son was so tainted with corruption that its nature as thus characterized could not be changed, however many times the property might be transferred, except where conveyed to an innocent purchaser for value and without notice or knowledge of the fraud. In other words, it is obviously immaterial, so far as the plaintiff—the *actor* in this suit—is concerned, whether the defendant stood or did not stand *in pari delicto* to the fraudulent creation of the trust which she accepted from Van Allstead and promised to execute. The question whether she stood *in pari delicto* to the fraudulent contract or as a *particeps criminis* in the fraud giving rise to it could be material only where she was also seeking affirmative relief as to the property, in which case, should she be found, equally with plaintiff, to be a party to the fraud, a court of equity would refuse to interfere in behalf of either.

But, in the case at bar, the plaintiff, according to his own admissions and the findings of the court, was a *particeps doli* in the transaction, and, therefore, regardless of whether the defendant knew of the fraudulent creation of the trust when the duty of its execution was transferred to her, by her own consent, it may be, he is in no position to ask a court of equity to restore him to rights of which he, *ex industria,* divested himself in order to defraud others. "If a contract has been entered into through fraud, or to accomplish any fraudulent purpose, a court of equity will not, at the suit of one of the fraudulent parties—*a particeps doli*—while the agreement is still executory, either compel its execution or decree its cancellation, nor after it has been executed, set it aside, and thus restore the plaintiff to the property or other interests which he had fraudulently transferred." (Pomeroy's Equity Jurisprudence, sec. 401, and cases cited in footnote thereof.) In other words, as the same author declares, "any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose

very foundation is good conscience." And, in *Alaniz* v. *Casenave,* 91 Cal. 47, [27 Pac. 521, 523], Judge Temple said that "courts will not allow a trust to be proven by a party to the fraud, if the trust was created for a fraudulent purpose." Many other cases affirming the doctrine as thus stated may be found in the California reports.

It is very true that it may be looked upon as a harsh rule that will permit one not entitled to property to maintain a good title thereto by reason of the fraud of the person from whom he has obtained it without having paid any consideration therefor. The practical effect of this decision, unless the plaintiff has some efficacious legal remedy that will relieve him of his dilemma, will be to confirm title in the defendant, unless the claims of the creditors of plaintiff are yet alive, in which event the property may be pursued and seized to satisfy such claims. But, even if, under the circumstances here, the defendant may in effect be sustained in her fraudulent claim to the title to the property in dispute, on the other hand the harshness of such consequence falls upon one who would fraudulently conceal his property so as to escape the just demands of those having a claim upon it. The lien of the deficiency judgment against plaintiff, presumably alive when the fraudulent trust was created, would have attached to this property immediately had the deed from the Marshalls been executed in his name. This proposition he well understood, and now, if a court of equity will not, as it cannot, lend its aid to the consummation of his fraud, the penalty he must suffer can hardly be said to be unjust, even though one not legally entitled to do so may reap the fruits thereof. If the defendant may claim that he has suffered through the perfidy of his trustee, his creditors can likewise say that they have suffered through his perfidy. In any event, as stated, a court of conscience cannot consistently with the very principles which have occasioned its existence lend its aid to relieve a party from the results of his own fraud.

The judgment is reversed.

Chipman, P. J., and Burnett, J., concurred.