Submitted on briefs February 15, reversed and remanded March 22, rehearing denied April 26, 1921.

## REID v. MULTNOMAH COUNTY.

(196 Pac. 394.)

**Bills and Notes—Presumption That Note was for Sufficient Consideration Obtains Until Successfully Controverted.**

1. It is a presumption of law, satisfactory until successfully controverted by other evidence, "that a promissory note * * was given or indorsed for a sufficient consideration" (Section 799, par. 21, Or. L.).

**Taxation—Notes from Administrator to Deceased Held Unpaid at Time of Assessment and Taxation.**

2. In a suit to enjoin the collection of taxes levied against the property of an estate of which plaintiff was administrator, evidence *held* to show that certain notes given by plaintiff to the deceased in his lifetime were verified as a part of the estate by the administrator, under Section 1177, Or. L., and must have belonged to the estate, and were not canceled before time for assessment, in view of the presumption that the administrator would have obeyed the law by reporting such payment and cancellation, as required by Section 799, paragraph 34, Or. L.

**Taxation—Notes Belonging to Estate Given by Administrator Held Taxable.**

3. Notes from administrator to decedent *held* assessable for tax in view of Section 4232, Or. L., providing for assessment of all property situated and owned within the state except that specifically exempt, and Section 4234, defining personal property as including all debts due or to become due from solvent debtors, including notes.

**Taxation—Facts Show Administrator Intended to Defraud Revenue Law, and It was Proper for Assessor and Board of Equalization to Tax Estate's Notes.**

4. In a suit to restrain a county from collecting tax on notes given by plaintiff to a decedent, plaintiff's admissions *held* to show that he,

as administrator of decedent's estate, intended to commit a fraud against the revenue laws of the state, and that such notes were taxable, in view of Sections 4268, 4269, 4272, subsections 1, 2, and Sections 4273, 4277, 4291, 4292, 4299, Or. L., relating to taxation and assessment by the county assessor upon an administrator's failure to properly list the estate's property so that its assessment by the assessor and board of equalization was without error.

**Taxation—Notes Given for Money to Purchase Real Estate are Taxable.**

5. Notwithstanding Laws of 1919, page 153, adding paragraph 9 to Section 3554, L. O. L. (Section 4235, Or. L.), exempting from taxation all notes secured by recorded mortgages on real property, where money borrowed to pay for real estate which was subject to taxation, the debt owed by the borrower to the lender as evidenced by promissory notes was not exempt from taxation for the reason that a tax thereon would result in a tax on both the land and the money borrowed.

**Equity—Party Seeking to Enjoin Collection of Taxes must Come into Equity With Clean Hands.**

6. Plaintiff seeking to enjoin a county and its sheriff from collecting a tax on notes he had given to a decedent of whose estate he was administrator may not complain of the clouding of title to his own lots, where such cloud was caused by his own misdoings, and he conspired as administrator to defeat the state's revenue laws, since he has been guilty of bad faith, fraud and tax-dodging, since he does not come with clean hands.

From Multnomah: WILLIAM N. GATENS, Judge.

In Banc.

William Reid, plaintiff and respondent, instituted in the Circuit Court of the State of Oregon in and for Multnomah County a suit to enjoin T. M. Hurlburt, Sheriff of Multnomah County, from collecting the sum of $2,197.53, or any sum over and above $781.65, as taxes due Multnomah County from him, as administrator of the estate of David C. Pelton, deceased. The suit also had for its purpose the restraining of the defendant from enforcing said tax against the administrator personally, and the removal of a cloud upon the title to Lots 1 and 2 in Block 21, East Portland, alleged to be the property of plaintiff individually.

David C. Pelton died intestate in Multnomah County, Oregon, on September 22, 1912. William Reid, plaintiff, and husband of the only child of deceased, was appointed administrator of the estate, which, after being administered, was settled and closed on May 22, 1913.

It is charged in the complaint and admitted by the answer that Reid, as administrator of the estate, became possessed of property including the following:

| | |
|---|---:|
| Promissory note of Crossett Timber Co. | $25,000 |
| Promissory note of G. S. Stoddard | 1,700 |
| Promissory note of A. C. Carty | 1,650 |
| Promissory note of Independent Laundry Co. | 100 |
| 1 automobile, value | 500 |
| | $28,950 |

It appears from the record that the personal property of the estate was assessed for the year 1913 at a total sum of $81,390, and that the taxes arising therefrom amounted to $2,197.53. The plaintiff contends that the correct amount of the total personal property assessment should have been the value of the above-mentioned promissory notes, aggregating $28,450, and of the automobile, namely, $500, making a total of $28,950, and that the taxes should therefore have been $781.65 instead of $2,197.53.

William Reid, administrator and plaintiff, testified as follows:

"Q. You are the plaintiff in this case?

"A. Yes, sir.

"Q. Are you the owner of Lots One and Two, Block Twenty-one, East Portland?

"A. Yes, sir.

"Q. Did David C. Pelton ever own or have any interest in that property?

"A. No, sir.

"Q. When did Mr. Pelton die?

"A. I think it was September 12, 1912. * *

"Q. Who are the heirs of Mr. Pelton?

"A. Mrs. Pelton, and my wife, Mrs. Reid.

"Q. Mrs. Reid is his only child?

"A. Yes.

"Q. Mrs. Pelton his widow?

"A. Yes. * *

"Cross-examination.

"Q. (Exhibiting paper to witness.)   I will ask you whether this is your signature?

"A. Yes, that is my signature.

"Q. This document I just showed you marked Defendant's Exhibit 1, that was filed by you with the assessor, purporting to be a statement of all the assessable personal property in this county belonging to the estate on March 1, 1913, was it not?

"A. I think so.

"Q. In this are blanks for listing different things. The only thing you listed was an automobile of the value of $300, and office furniture $150?

"A. That is all.

"Q. That is the only property you turned in to the assessor as personal property belonging to that estate in your possession on the 1st day of March, 1913?

"A. Yes.

"Q. As a matter of fact you did have other personal property in your possession at that time belonging to the estate, did you not?   For instance, you had the property mentioned in the complaint, note of the Crossett Timber Company, $25,000?

"A. Yes.

"Q. Note of G. S. Stoddard, $1,700?

"A. Yes.

"Q. Note of A. C. Carty, $1,650?

"A. Yes.

"Q. Note or account of the Independent Laundry Company for $100?   Those were all in your possession, were they not?

"A. Yes, I guess they are, I have some of them. * *

"Q. They all had a cash value, did they not?

"A. At that time they had.

"Q. And the cash value of them was over $20,000, was it not?

"A. Something like that.

"Q. They did have a cash value of over $20,000, did they not, at that time?

"A. I don't think it was quite so much as that.

"Q. In addition to that, didn't you have in your possession at that time a couple of notes signed by yourself in favor of the deceased Mr. Pelton, executed by you some time before he died, which notes aggregated about $100,000? You had those in your possession at that time, March 1, 1913?

"A. I couldn't tell whether I had them or not, but I think the notes were satisfied and paid prior to that, I think.

"Q. You didn't cancel those notes until the estate was settled, did you?

"A. No.

"Q. You were not discharged as administrator, according to the allegation of the complaint, until the 21st of May, 1913?

"A. I think about that time.

"Q. It was not until that time those notes were canceled, was it?

"A. I couldn't say just as to that; it was near about that time.

"Q. I will ask you whether this is your signature (handing witness paper).

"A. Yes.

"(Paper marked Defendant's Exhibit 2.) * *

"Q. You say, 'In settling the estate of David C. Pelton, deceased, the said William Reid caused the said notes of $100,000 to be canceled.' So to the best of your recollection wouldn't you say now you canceled those notes at the time the estate was settled?

"A. I imagine I did.

"Q. The estate was settled in May, 1913.

"Mr. Boothe: The 21st or 22d of May it was closed; he was discharged the 21st or 22d of May.

"Q. Then, Mr. Reid, to the best of your recollection, now, these $100,000 notes executed by you were

in your possession on the 1st of March, 1913, were they not?

"A. I think they were at that time.

"Q. Was there anything else in your possession at that time as administrator, besides the $100,000 and these other notes?

"A. No.

"Q. Didn't you have some $34,000 in money at that time in your possession as administrator?

"A. I don't remember whether I had any money.

"Q. Didn't you have in your possession as administrator $34,072.20, money belonging to the estate on the 1st of March, 1913?

"A. I couldn't say as to that.

"Q. You never indicated to the assessor you had that?

"A. No, nor anyone else.

"Q. But you may have had it?

"A. Might have been $100,000 for all I know."

Mr. T. V. Ward testified as follows:

"Q. Were you present when those notes were signed and given to Mr. Pelton?

"A. I don't know as I was present at the time; I remember of the circumstance.

"Q. But what you stated you know to be the substance of their agreement?

"A. Yes. He was advancing about $85,000, I wouldn't say the exact figures, on the purchase price of the property to Mr. Reid. * *

"Q. Mr. Pelton was father-in-law of Mr. Reid, * * was he not?

"A. Yes.

"Q. At the time they bought the property Mr. Pelton advanced Mr. Reid $100,000, something like that, in cash?

"A. About eighty-five, as I understood it.

"Q. That was actually turned over to Mr. Reid?

"A. It was talked that way.

"Q. Mr. Reid gave him these notes for $100,000 to evidence that indebtedness?

"A. Sort of a memorandum between themselves; they always did business between themselves that

way. Sometimes it would be a rough piece of paper picked up off the desk."

The evidence shows that the plaintiff, as administrator of the Pelton estate, listed the assessable property of said estate with the assessor as consisting of an automobile of the value of $300 and office furniture of the value of $150. Henry E. Reed, Assessor of Multnomah County, testified, concerning this matter, as follows:

"Q. I will show you Defendant's Exhibit 1, and ask you when that came into your possession, and from whom you received it.

"A. This was received by me on the 11th of April, 1913, it has the receiving date stamp on it, and came from the gentleman who signed it,—William Reid, administrator of the estate of David C. Pelton, deceased.

"Q. That purports to be a statement of all the personal property in possession of the administrator on the 11th of April, 1913?

"A. The original blank was sent to Mr. Reid with the request that he make a return of all the personal property of the estate, and this is the return he made.

"Q. That aggregates how much?

"A. There is a report of an automobile, $300, and for office furniture $150, total $450. * *

"Q. (Cross-examination.) How did you make up that assessment of $81,500 against Mr. Reid?

"A. In the absence of any satisfactory return from the administrator, we had to have recourse to the inventory, and the inventory showed, excluding United States Bank stock, Lumbermen's Bank and other companies' stock, excluding them, it showed notes secured by mortgages and otherwise, $180,550. As I recall, the office does not assess notes secured by mortgages. As I recall the Crossett note and the —— note amounted to $70,000. We deducted that from the total of $180,550. That left $110,550, took the balance at 75 per cent. * * "

The assessor notified William Reid, as administrator, of the assessment, totaling $81,390. Thereafter, Mr. Reid appeared before the board of equalization for Multnomah County, representing to it that:

"On the first day of March, 1913, he had in his possession as such administrator the following promissory notes, payable to David C. Pelton, to wit:

"Crossett Timber Company, balance.........$25,000
"G. S. Stoddard........................... 1,700
"A. C. Carty.............................. 1,650
"Independent Laundry Co.................. 100
                                          _____
                    "Total............ $28,450

"The above-mentioned note against G. S. Stoddard is not considered of any value and probably cannot be collected, and it is very doubtful whether or not anything will ever be realized upon the Carty note. The other two notes are good, but I do not think the Stoddard and Carty notes should be assessed for the reason that they are considered practically of no value.

"Some little time before Mr. Pelton's death, he was interested with William Reid in the purchase of fractional Blocks 1 and 2 in East Portland, being water front property, and the interest of Mr. Pelton at that time was about $100,000. In order to designate this interest of Mr. Pelton and as a matter of understanding between them, Mr. Reid executed his notes in favor of Mr. Pelton aggregating the sum of $100,000, which were to be held pending the disposition of the property, but unfortunately Mr. Pelton died before any sale of the property was effected, and upon the appointment of Mr. Reid as administrator he took up in the administration of the estate of David C. Pelton, deceased, those notes aggregating $100,000 as an asset in favor of the estate, and the estate was administered upon and the inheritance tax paid on the notes. Upon settling the estate of David C. Pelton, deceased, the undersigned, William Reid, caused said promissory notes of $100,000 to be canceled, and he has arranged with Ellen Pelton and Etta Reid, his

wife, sole heirs of the estate of David C. Pelton, deceased, respecting the payment by him to them of the interest owned by Mr. Pelton in said real property and as represented by said promissory notes. * *

"The statement received by the undersigned, dated September 5, 1913, Roll 6216, Line 10, contains a purported assessment against William Reid, administrator of the estate of David C. Pelton, deceased, for the year 1913, as determined by the assessor, being money, notes and accounts $80,890, agricultural tools, wagons, etc., $550, total $81,390. * * We ask your Honorable Body to eliminate all that portion except the Crossett Timber Company note in the sum of $25,000, and the Independent Laundry Company note in the sum of $100."

The appraised value, as disclosed by the inventory of the estate of David C. Pelton, deceased, filed October 20, 1912, is $453,609.07, which includes the following notes from William Reid, the administrator, to David C. Pelton:

Promissory note of William Reid dated March 14, 1912, face $25,000, interest at 6 per cent;
Promissory note of William Reid dated March 14, 1912, face $25,000, interest at 6 per cent;
Promissory note of William Reid dated March 14, 1912, face $25,000, interest at 6 per cent.

During the session of said board of equalization, the application of plaintiff was considered and acted upon by the board, and an order made and entered of record by said board in and by the terms whereof the application of plaintiff was by it denied. No appeal from the order denying plaintiff's application has ever been taken.

From the decree of the Circuit Court against defendants and appellants and in favor of plaintiff and respondent, an appeal was taken to this court, alleging error as follows:

"That the complaint does not state facts sufficient to constitute a cause of suit.

"That the circuit court never at any time had jurisdiction of the subject of the suit.

"That the board of equalization of Multnomah County, prior to the institution of the suit, had determined and decided upon the true cash value of the money, notes and accounts owned by and belonging to the estate of David C. Pelton on the first day of March, 1913, at the hour of 1:00 A. M. of said day.

"That no appeal was taken from said order of the board of equalization.

"In not finding that the said notes aggregating $100,000 represented, on the first day of March, 1913, at the hour of 1:00 A. M. of said day, an existing indebtedness on the part of plaintiff and in favor of David C. Pelton, deceased.

"In not finding that the plaintiff was justly indebted to said estate in the full sum of $100,000.

"In finding that at any time prior to May 20, 1913, said notes had been canceled or paid, or that the indebtedness was not in existence on the first day of March, 1913.

"In not finding that on the said first day of March, 1913, plaintiff was in possession, as such administrator, of property of the estate, money, notes and accounts, of the true cash value of the full sum of $80,890, and that the same was liable for taxes in the sum of $2,197.53.

"In adjudging and decreeing that the assessment made by the assessor of Multnomah County for the year 1913 against the plaintiff as administrator of the estate of David C. Pelton, deceased, aggregating $81,390, be corrected, changed or altered, and in decreeing that the tax upon said assessment for said year be the sum of $781.65, or any other sum less than $2,197.53.

"In adjudging that the defendants have no lien against said Lots 1 and 2, Block 21, East Portland, for said tax, and in restraining the defendants."

REVERSED AND REMANDED.

For appellants there was a brief submitted over the names of *Mr. Walter H. Evans,* District Attorney, and *Mr. George Mowry,* Deputy District Attorney.

For respondent there was a brief prepared and presented by *Messrs. Boothe & Richardson.*

BROWN, J.—1, 2. When the pertinent facts in this case are analyzed in the light of the statute relating to assessment and taxation, all intricate questions disappear. Were the promissory notes made and delivered by William Reid, plaintiff, to deceased in his lifetime, what they appeared to be? In other words, were these three certain promissory notes at the time of their assessment the written evidence of an indebtedness of $100,000 due and owing from Reid to the Pelton estate? We believe that both these inquiries should be answered in the affirmative. Assuming that these notes were what the law presumes them to have been; that is to say, that they were valid promissory notes made by Reid to Pelton for a valuable consideration, then, in that case, were they paid and canceled prior to March 1, 1913, as found by the lower court? We think this question should be answered in the negative. We are convinced that the lower court erred in finding that these notes had been satisfied prior to March 1, 1913. From the evidence, from the exhibits, and particularly from Reid's statement made to the board of equalization, it is manifest that the three promissory notes aggregating $100,000, executed by William Reid to David C. Pelton in March, 1912, constituted proof of a valid indebtedness, and were unpaid at the hour of 1 o'clock A. M. on March 1, 1913. We have investigated the report of the doings of the administrator as exhibited by the evidence, and there is no suggestion contained

therein that the promissory notes were paid or satisfied in any way prior to the settlement of the estate. The presumption is that the law has been obeyed, and if said notes had been paid during Reid's term as administrator, he would have reported the same to the court: Section 799, par. 34, Or. L.   Plaintiff Reid well understood this, and in his statement to the board of equalization filed September 13, 1913, said:

"Upon settling the estate of David C. Pelton, deceased, the undersigned, William Reid, caused said promissory notes of $100,000 to be canceled, and he has arranged with Ellen Pelton and Etta Reid, his wife, sole heirs of the estate of David C. Pelton, deceased, respecting payment * * by him to them."

Reid, after having been appointed administrator of the Pelton estate, took possession of said notes as such administrator, and in compliance with his duty as such caused them to be appraised as property of the estate.   The inventory, as by law commanded, sets forth the fact that in accordance with the statute certain real and personal property situate in Multnomah County, Oregon, "has been exhibited by the administrator," and that "we appraise the same at the sums set opposite each item in said inventory." The three notes of Reid's bearing date March 14, 1912, aggregating $100,000, were duly appraised.   By his oath administrator Reid, as provided by Section 1117, Or. L., verified this appraisement.   He paid the inheritance tax upon the appraised valuation of the personal property of the estate, which included the notes.   His testimony in the court below establishes the fact that he obtained the money evidenced by these notes from his father-in-law, and used it in his purchase of Lots 1 and 2, Block 21, East Portland. His friend, T. V. Ward, testified that the money which

100 Or.—21

Reid obtained from Pelton went into the lots. Reid swore upon the witness-stand that he was the owner of Lots 1 and 2, Block 21, East Portland, which were paid for, in part, with the money obtained from Pelton, and that Pelton at no time owned or had any interest in that property (see statement). If the lots were plaintiff's, the notes evidenced a just indebtedness due from him to the Pelton estate. Furthermore, as appears by the final account made by Reid as administrator, it is seen that he collected his commission as such administrator upon $273,297.07, the appraised value of the personal property of the estate, which valuation included his indebtedness to the estate as evidenced by said promissory notes. The estate of David C. Pelton, deceased, owned all the property that was assessed. The promissory notes executed by Reid in favor of Pelton represented actual value. An indebtedness was due and owing the Pelton estate from the administrator, the written evidence of which consisted of the three promissory notes. The record before us abundantly satisfies our minds upon that point. It is a presumption of law, satisfactory until successfully controverted by other evidence:

"That a promissory note * * was given or indorsed for a sufficient consideration." Section 799, par. 21, Or. L.

Plaintiff Reid has not overcome this presumption. There are, however, many circumstances that add to, corroborate, and thus strengthen the presumption that the law makes relating to the sufficiency of the consideration for the notes. If these notes were the property of the Pelton estate and of the value of $100,000 when the inventory was caused to be made and filed by the administrator as provided by law;

if they were the property of the Pelton estate and of
the value of $100,000 for the purpose of the inheri-
tance tax collected by the state; if, on May 14, 1913,
at the time plaintiff filed his final account as admin-
istrator of the Pelton estate, they were the property
of that estate and were worth $100,000 for the pur-
pose of Reid's commission as administrator,—then
they were worth $100,000 for the purpose of assess-
ment and taxation in Multnomah County on March 1,
1913.

3. It is our opinion that, under the terms of Section
4232, Or. L., providing that "all personal property
situate or owned within this state, except such as may
be specifically exempted by law, shall be subject to
assessment and taxation," and, under the provisions
of Section 4234, Or. L., defining personal property as
including "all debts due or to become due from
solvent debtors, whether on account, contract, note,
mortgage, or otherwise," the indebtedness as evi-
denced by the Reid notes is assessable.

4. Section 4268, Or. L., is as follows:

"The assessor, * * shall, on or before the first
Monday in March * * , proceed and assess all tax-
able property within his county * * . Except as
otherwise provided by law, every person shall be as-
sessed in the county where he resides at the hour of
1 o'clock A. M. on March 1st of the year when the
assessment shall be made for all real and personal
property owned by him within such county. * * "

"All personal property not exempt from taxation
shall be valued at its true value in cash * * ." Sec-
tion 4269, Or. L.

"At the time prescribed by law the assessor in
each county shall ascertain by diligent inquiry the
names of all persons liable to taxation in his county
who by law are assessable to him, and also all the
taxable personal property * * which by law is as-
sessable by him * * ." Section 4272, Or. L.

"Every assessor shall require any person liable to * * be assessed by him * * to furnish such assessor:

"1. A list of all the real estate of such person * *, showing the true cash value of every parcel of such real estate, or interest therein, owned by such person * *.

"2. A list of all the personal property of such person, * * liable to taxation in his county; which list shall include a statement to be made by such person, * * showing the true cash value of such personal property, or of the several items thereof, owned by such person, * * or in which such person * * has any interest.

"The assessor shall require such person, * * to make oath that, to the best of his knowledge and belief, such list, whether of real or personal property, or both, contains a full and true account of all the real or personal property, or both, or of any interest therein, of such person, * * liable to be taxed in said county, and the true cash value of such real or personal property. * * . Should any such person, * * refuse to furnish and to swear to any such list, the assessor shall ascertain the taxable property of such person * * and shall appraise the same from the best information to be derived from other sources. Upon the failure of any such person * * to make such valuation, the assessor shall be deemed to be the *authorized agent* of such person * * for the purpose of making said valuation, and the same, as given in the assessment-roll, shall have the same force and effect as if made under oath by said person * * . The assessor may increase any valuation made by any such person * * for purposes of assessment and taxation." Section 4273, Or. L.

"When any person is assessed as * * administrator, he shall be assessed for the real and personal property held by him in such representative character at the full value thereof." Section 4277, Or. L.

"Each assessor shall give three weeks' public notice in some newspaper printed in his respective county * * setting forth that on the second Monday

in September the board of equalization will attend * * and publicly examine the assessment-rolls, and correct all errors in valuation * * ." · Section 4291, Or. L.

"The county judge, county clerk and assessor of the several counties of this state shall constitute a board of equalization to examine and correct the assessment-rolls * * and to increase or reduce the valuation of the property * * assessed * * ." Section 4292, Or. L.

"Any person who shall have petitioned for the reduction of a particular assessment * * , who shall be aggrieved by the action of such board, may appeal therefrom to the circuit court of the county. * * If, upon hearing, the court finds the amount at which the property was finally assessed by the board of equalization is its actual full cash value, and the assessment was made fairly and in good faith, it shall approve such assessment; but if it finds that the assessment was made at a greater or less sum than the actual full cash value of the property, or if the same was not fairly or in good faith made, it shall set aside such assessment and determine such value * * ." Section 4299, Or. L.

As will be noted from the statement, William Reid, as administrator of the estate of David C. Pelton, deceased, while pretending to perform his duty as such administrator in complying with the revenue laws of this state, on April 11, 1913, listed the assessable property of the estate as comprised of an automobile and some office furniture, of the total value of $450. Under the law of this state as set forth herein, it became necessary for Henry E. Reed, the then assessor of Multnomah County, Oregon, upon the failure of administrator Reid to prepare a list containing the true valuation of the property of the estate which he was administering, to ascertain the taxable property of such estate for the purpose of arriving at the value thereof. It became his duty, as

such assessor, to make a list of all the personal and real property of the estate. This duty the assessor performed. He searched the records of the probate court, and upon inquiry and from his best knowledge valued the money, notes, and accounts, for the purpose of assessment, at $80,890. On September 5, 1913, he served notice on William Reid, as administrator of the estate of David C. Pelton, of the assessment thus made. Reid, administrator and plaintiff, appeared before the board and filed a petition in which he sought to have the assessment reduced by the elimination from the list of taxable property of his own indebtedness as shown by the three certain promissory notes executed by himself to the deceased during his lifetime. He admitted, when testifying in the lower court, that at the time he filed the list of taxable property with the assessor containing property of the value of $450 only, he had other personal property of the estate in his possession, namely, the note of Crossett Timber Company valued at $25,000; Stoddard note of $1,700; Carty note of $1,650; Independent Laundry Company note of $100; and that the cash value of these notes was about $20,000. His own admissions show that he intended to commit a fraud against the revenue law of this state, and the evidence as a whole shows that his indebtedness to the Pelton estate was taxable. Therefore, under our statute, the assessor and the board of equalization committed no error. The duty of making the valuation was cast upon the assessor. The law of our state is clear and plain on that subject.

5. Suggestion was made in the lower court that, the money obtained by plaintiff from deceased having been borrowed for the purpose of purchasing real estate, to assess the indebtedness represented by the

notes given therefor would be inequitable, for the reason that it would result in a tax both upon the land and upon the money borrowed. At the time of the assessment in controversy, the indebtedness represented by these notes was assessable. It was not exempt. Notwithstanding the fact that the money was borrowed with the intention of paying for real estate, and that this real estate was subject to taxation, nevertheless the debt owed by the borrower to the lender as evidenced by the notes in this case was taxable. For the purpose of exemption we must look to the statute, and we find it there written that all real and personal property not specially exempted is taxable. It is commonplace law that statutes exempting property from taxation are to be strictly construed. It is true that in 1919 the legislature, by enacting Chapter 104, Laws of 1919, added paragraph 9 to Section 3554, L. O. L. (Or. L. 4268), exempting from taxation all notes secured by recorded mortgages on real property.

Plaintiff refers to the case of *Silverfield* v. *Multnomah County*, 97 Or. 483 (192 Pac. 413). He can draw no comfort from that case. This court held that Silverfield was not the owner of the merchandise assessed against him in the amount of ten thousand dollars. It further held that his filing an affidavit to that effect with the board of equalization did not preclude him from restraining collection of the tax under the facts in that case. It also ruled that the assessment on property not owned, was not maintainable as overvaluation of property owned by him.

6. The plaintiff says that the title to Lots 1 and 2, Block 21, East Portland, is clouded. It will be remembered that these are the lots which were, in

part, purchased with the money obtained from Mr. Pelton. It has pleased the plaintiff to call these lots his, and he has testified that Pelton never owned any interest in them. Again, he has testified that the notes were simply given as evidence to show Mr. Pelton's interest in the aforesaid lots. It was plaintiff's wrongful conduct in the matter of the assessment involved in this litigation that caused the title to the lots to be clouded. He now seeks a court of equity to remove the cloud which his own act has cast upon his title. At the threshold he meets with a maxim of equity which rejects his suit. He who comes into a court of equity must come with clean hands.

It has been written that:

"Whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." 1 Pomeroy's Equity Jurisprudence (4 ed.), § 397, and the following authorities under note b: *Lewis* v. *Holdrege,* 56 Neb. 379 (76 N. W. 890); *Pineville Land & Lumber Co.* v. *Hollingsworth,* 21 Ky. Law Rep. 899 (53 S. W. 279); in *Ashe-Carson Co.* v. *Bonifay,* 147 Ala. 376 (41 South. 816); in *Allstead* v. *Laumeister,* 16 Cal. App. 59 (116 Pac. 296); in *Miller* v. *Kraus* (Cal. App.), 155 Pac. 834; in *Wellsville Oil Co.* v. *Miller,* 44 Okl. 493 (145 Pac. 344); in *Conners* v. *Conners Bros. Co.,* 110 Me. 428 (86 Atl. 843); *Harton* v. *Little,* 188 Ala. 640 (65 South. 951); *Michigan Pipe Co.* v. *Fremont Ditch Co.,* 111 Fed. 284 (49 C. C. A. 324); *City of Chicago* v. *Union Stock Yards & Transit Co.,* 164 Ill. 224 (45 N. E. 430, 35 L. R. A. 281); *Scott* v. *Austin,* 36 Minn. 460 (32 N. W. 89, 864).

Again we quote from this eminent law-writer: "Any really unconscientious conduct, connected with a controversy to which he is a party, will repel him from the forum whose very foundation is good conscience." 1 Pomeroy's Equity Jurisprudence (4 ed.), § 404; *Sanders* v. *Cauley*, 52 Tex. Civ. App. 261 (113 S. W. 560); *Pendleton* v. *Gondolf*, 85 N. J. Eq. 308 (96 Atl. 47); *Baird* v. *Howison*, 154 Ala. 359 (45 South. 668).

A court of equity is impelled to deny its remedies to a complainant who has been guilty of bad faith, fraud, or tax-dodging in the immediate transaction which forms the basis of his suit.

This case is reversed and ordered remanded.

                                    REVERSED AND REMANDED.