[Civ. No. 12632.  First Dist., Div. One.  Nov. 28, 1944.]

CAROLINE F. TAYLOR, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) et al., Defendants; M. ROSSA ANDREWS, Respondent.

J. LeRoy Wehr for Appellant.

Booth Goodman and John M. Hoffman for Respondent.

KNIGHT, J.—The plaintiff, Caroline F. Taylor, brought this action to quiet title to real property of which she claimed to be sole owner. One of the parties defendant, M. Rossa Andrews, filed a cross-complaint claiming to be the owner of an undivided one-half interest in the property. The trial court found in favor of the defendant on the cross-complaint, and accordingly adjudged and decreed that each of the parties was the owner of an undivided one-half interest in the property. Plaintiff appeals.

The property consists of 320 acres of land in Tulare County. The ownership thereof has remained in the Taylor family for many years, during which time numerous transactions were had among various members of the Taylor family involving the title to the property. However, at the time the present action was submitted for decision, the only persons claiming any interest in the property were the parties to this appeal, and the determination of the controversy between them centers upon the question of the legal effect of a deed executed and delivered by the cross-complainant and Beatrice Taylor, in whom the record title then stood, conveying sole ownership in the property to plaintiff.

The transactions that took place and the events that occurred leading up to the execution and delivery of the deed, and which have a bearing on the question at issue, may be stated as follows: On August 14, 1928, A. V. Taylor, then being the owner of the entire property, mortgaged it to the Federal Land Value Insurance Company for upwards of $16,300. The note and mortgage were subsequently assigned to A. V. Taylor's sister-in-law, Agnes E. Taylor, and in December, 1932, she assigned the note and mortgage to her son, Everett B. Taylor, an attorney, for the purpose of collection. Three months thereafter and in March, 1933, Everett obtained a personal loan of $4,900 from one Leo Vanucci, and as secur-

ity for the payment thereof he assigned to Vanucci the A. V. Taylor note and mortgage, but the assignment was not recorded until three and a half years later, to wit, in September of 1936. Meanwhile, in August, 1934, A. V. Taylor conveyed the property to Everett, the latter taking title thereto in trust for his mother, and in September, 1934, Everett filed a release of the outstanding mortgage. The plaintiff, Caroline F. Taylor, is the divorced wife of Everett; Beatrice Taylor is their daughter, and Miss Andrews, the cross-complainant, is a sister to Agnes, Everett's mother. The divorce was granted in 1922, at which time a property settlement agreement was entered into between the parties, and in March, 1935, Everett was indebted to Caroline under the property settlement agreement in the sum of $23,500. On March 12, 1935, Everett deeded the property to Beatrice and Miss Andrews as joint tenants. This was done at the request of his mother, the real owner of the property. Neither Beatrice nor Miss Andrews knew that the property was to be deeded to them, nor did either pay any consideration whatever therefor. They resided at different places a considerable distance apart around or near the East San Francisco Bay region, and the first information they received regarding the matter was when each received a letter from Everett, dated March 13, 1935, stating that at his mother's request he had deeded the property to them and had sent the deed to the county recorder at Visalia to be recorded. In July of the following year Agnes, the mother of Everett, died, and two months after her death and on September 30, 1936, Everett died. Within seven months subsequent to Everett's death, the evidence as to the exact time being uncertain, Beatrice and Miss Andrews executed and delivered the deed in question conveying full title to plaintiff. The deed was drawn at the request of the grantors by Attorney Charles Wehr, a friend of the Taylor family, who had been acting as legal adviser of the grantors as well as plaintiff; and under the circumstances hereinafter related plaintiff gave the deed to Attorney Charles Wehr to be recorded. He died on April 25, 1939, and up to the time of his death the deed had not been recorded. After his death it could not be found.

Plaintiff's complaint set forth five causes of action. The first was in the usual form to quiet title to the entire property and was directed against all defendants. The purpose of the second was to clear the title of the assignment by Everett to Vanucci of the A. V. Taylor note and mortgage. It was therein

alleged in substance that Everett never was the owner of the note and mortgage; that he took the assignment thereof "in trust as a matter of convenience only" for his mother, for the purpose of collection, and that the subsequent assignment thereof by him to Vanucci was fraudulent and void. In the third cause of action it was alleged on information and belief that while Everett held title to the property in trust for his mother he executed a deed purporting to convey the property to Yolanda Taylor (to whom he was then married) which deed plaintiff sought to have cancelled and declared void. The fourth cause of action concerned the deed from Everett to Beatrice and Miss Andrews, and the subsequent deed from Beatrice and Miss Andrews to Caroline. The substance of the allegations thereof was that Agnes, the mother of Everett, desiring to satisfy her son's indebtedness to Caroline, "gave plaintiff said property and caused the said E. B. Taylor [Everett] to deed said property" to Beatrice and Miss Andrews in trust for plaintiff, and that thereafter "as evidence of said trust, the said M. Rossa Andrews and Beatrice V. Taylor did make, execute and deliver to plaintiff a deed of all of their right, title and interest in and to the said above described property." In the fifth cause of action it was alleged that Attorney Wehr had advised plaintiff in March, 1937, that in order to clear the title to the property a test case should be brought as to a portion thereof; that he further advised that such a case could be prosecuted more expeditiously if brought in his name; that to carry out such purpose he caused Beatrice and Miss Andrews to deed to him one-quarter of the property (this was prior to the execution and delivery of the deed in question); that thereupon he brought suit in his own name to quiet title thereto; that he had agreed to reconvey the one-quarter interest back to Beatrice and Miss Andrews after the suit was determined, but that his death occurred prior to the trial of the action, leaving outstanding in his name a one-quarter interest in the land. Plaintiff asked, therefore, that the deed to him be cancelled and declared void.

However, after the commencement of the present action and prior to the rendition of the decision, all persons against whom the several causes of action were directed, except Miss Andrews, assigned or quitclaimed to plaintiff any interest they may have had in the property. In this connection the record shows that Vanucci and his wife reassigned to plaintiff the

A. V. Taylor note and mortgage, and that Beatrice conveyed to her mother by deed all interest she had in the property. Thus there was left for determination only the respective rights of Caroline and Miss Andrews under the lost deed whereby Miss Andrews and Beatrice conveyed to Caroline full ownership in the property, and as shown by the bill of exceptions upon which the appeal was taken, the vital point in that controversy was not whether there was a valid delivery of the deed on the part of Miss Andrews, but was whether, in view of the evidence adduced at the trial as to the reason and purpose for the execution and delivery of the deed, Miss Andrews was entitled to seek the aid of a court of equity in having the interest she had thus conveyed to Caroline restored to her. On that point it was claimed on behalf of the appellant Caroline that it was the desire of Agnes, the real owner of the property, to satisfy the debt owing by her son to appellant under the property settlement agreement; that she had previously caused Everett to convey the property to Beatrice and respondent, in trust for appellant; and that after the deaths of Agnes and her son, Beatrice and respondent as such trustees in execution of their trust and for the purpose of carrying out the wishes of Agnes, conveyed the property to appellant. In support of such claim Beatrice testified that subsequent to the death of Agnes, her father, who had again married, demanded that the property be reconveyed to him; that respondent was informed of such demand, but that they did not comply therewith; that after the death of her father she had a conversation with respondent in her mother's apartment in Berkeley, in her mother's presence, at which time she told respondent that she considered it advisable for them to deed the property to her mother in payment of the debt owing to her by Everett, and that respondent replied: ''I am agreeable to that.'' Continuing, Beatrice testified: ''I told Miss Andrews that Mr. Wehr had requested me to ask her for a letter ordering him or authorizing him to prepare the deed to Mrs. Taylor. Miss Andrews gave Mr. Charles Wehr such a letter. I saw the letter. Mr. Wehr brought the letter to my mother's home at the time he brought the deed which Miss Andrews had signed. I recognized Miss Andrews' signature to the letter. Mr. Charles Wehr brought the deed to my mother's home at 2641 Dwight Way, Berkeley.''

The witness then proceeded to relate the circumstances attending the delivery of the deed to her mother. After she

had done so counsel for respondent moved to strike out the testimony upon the ground that the respondent was not present. The trial court ruled that it was hearsay and granted the motion, saying: "The statement of all the parties there, what was said as to the conversation, what was said will stand out, and it is so ordered." However, on this appeal counsel for respondent concedes that testimony of the kind stricken out is admissible, citing *Dinneen* v. *Younger*, 57 Cal.App.2d 200 [134 P.2d 323], and *Williams* v. *Kidd*, 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E 703]. The testimony so stricken was as follows: "Mr. Charles Wehr brought the deed to my mother's home at 2641 Dwight Way, Berkeley. He came in and announced, 'I have a deed with Miss Andrews' signature on it, and Beatrice, you will sign it' and I signed the deed, and he said, 'Now hand it to your mother,' and I handed the deed to my mother and she looked it over and handed it back to Mr. Charles Wehr. At the time I passed the deed to my mother, Mr. Wehr said, 'Now, Beatrice, you understand that the title has passed from you to your mother and you are no longer the owner of the Delano property,' and he also said, 'This completes the transaction.' " Supplementing the foregoing testimony appellant testified that after the deed had been thus handed to her she "in turn, looked it over and handed it back to Mr. Wehr and asked him to record it"; but in this connection Beatrice testified that inasmuch as Mr. Wehr was going to bring suit to quiet title (as alleged in the fifth cause of action of the complaint) the deed "was not to be recorded until the termination of that quiet title action."

So far as the record shows, respondent did not deny the testimony given by Beatrice as to the conversation that took place in her mother's apartment at which her mother was present, wherein respondent stated that it was agreeable to her to deed the property to Beatrice's mother; furthermore, respondent admits having subsequently "executed a deed of the property in question; deeded it to Caroline Taylor," and having delivered the deed to Mr. Wehr; but as to her reason for having done so she testified as follows: "Mr. Charles Wehr told me that the banks were going to take over this property for debts that Everett Taylor had incurred, and in order to save the property, he thought I ought to deed it to someone for the time being, and suggested I deed it to Caroline Taylor and I consented to do that; and there was nothing more said about

it until a few months later when he sent me the deed and said in the letter that if I did not understand it, to communicate with him, which I did, and he said it was only for protection and I signed the deed and sent it right to him." On cross-examination she gave the following testimony: "Q. Miss Andrews, did Charles Wehr tell you that the banks were going to take over this property? A. Yes, he did. Q. What banks? A. The Antioch Bank, the Abstract Bank and the Brentwood Bank. Q. And did he say they had filed suit? A. He was having trouble with them, he did not say how far they had gone. He said that he was having trouble in settling with them, and this deed was executed to hold until he made a settlement with the bank." She was then asked the question: "What debt or bill was it that the banks were trying to collect? . . . who owed them the money?" and she replied: "Everett Taylor got part of the money, and I think a couple of notes his mother signed, see, those were the notes that he felt the bank should have the money, and the money that Everett got on his own, Mr. Charles Wehr said that they would have to give them that, and see if they let that go, but the notes that Mrs. Taylor, my sister signed with them, see, that they were paid, or at least he made a settlement with them." She further testified that it was some time in July, 1936, that Mr. Wehr spoke to her first about the deed that he afterwards sent to her for her signature, and that she heard nothing more about it until he wrote her the letter and sent the deed. The letter was dated November 2, 1936, and read as follows: "Dear Miss Andrews: I am enclosing a deed from Beatrice and yourself to Caroline, which Beatrice has already signed. Would you please sign this and return it to me? If you do not understand it or if you want any further information I would be very happy to give it to you and suggest in that case that you telephone to me before signing it. Very truly yours, Charles Wehr."

The trial court made no finding as to the execution and delivery of the deed in question, nor as to its purpose or effect. It found first that the allegations of paragraph 1 of each cause of action set forth in the complaint were untrue. Those allegations were merely that plaintiff was the owner and in possession of the property. The second finding was as follows: "2. That the allegations set forth in paragraph 2 of the plaintiff's complaint are untrue"; but obviously this finding is meaningless because there were five causes of action set forth

in the complaint, each embodying "paragraph 2," no two of which were alike, and the court did not specify to which of the several paragraphs 2 its finding was intended to apply. The substance of the third finding was that all parties sued except Miss Andrews had assigned and quitclaimed to plaintiff any interest they may have acquired in the property; and the substance of the fourth and fifth findings was merely that Miss Andrews claimed an undivided one-half interest in the property and that the allegations of the cross-complaint to that effect were true; that consequently she was the owner of an undivided one-half interest in the property, and that plaintiff was entitled to the other half. The conclusions of law were in form similar to the findings of fact.

■ Resolving all conflicts in the evidence in respondent's favor and accepting as true the explanation given by her for having executed and delivered the deed, it is apparent that under well settled doctrines of equity jurisprudence she was not entitled to any relief under her cross-complaint for the reason that according to her own testimony she intentionally and knowingly executed and delivered the deed in question conveying the property to appellant for the purpose of divesting herself temporarily of title thereto so that thereby the property would be placed beyond the reach of her grantor's creditors who were then threatening to seize it in payment of his indebtedness to them. ■ In other words, it is a fundamental rule, strictly adhered to, that equity will not lend its aid to one who intentionally conveys property for the purpose of hindering, delaying or defrauding creditors, in a suit in equity brought by him to obtain a nullification of the conveyance or a reconveyance of the property from the grantee, but will leave the grantor exactly where it finds him. In such a case it is held that the grantor is a *particeps doli* in the transaction, and therefore in no position to ask a court of equity to restore to him the title to the property of which he, *ex industria*, has divested himself in order to defraud others. (See *Saint* v. *Saint*, 120 Cal.App. 15 [7 P.2d 374], and authorities therein cited; also *Allstead* v. *Laumeister*, 16 Cal.App. 59 [116 P. 296], quoting Pomeroy's Equity Jurisprudence, §§ 397 and 401.)

■ Respondent evidently contends that the foregoing equitable doctrine applies only in cases where the grantor has conveyed his property for the purpose of hindering, delaying

or defrauding his own creditors, and it is asserted that there is no evidence in the present case showing that respondent had any creditors, and that therefore the doctrine may not be invoked against her. An analysis of the doctrine, as it is set forth in *Allstead* v. *Laumeister, supra,* shows, however, that the doctrine embraces within its scope any grantor who is seeking equitable relief, and is shown to be a party to the fraudulent purpose for which the conveyance was executed. In this regard the court in that case, after citing section 397 of Pomeroy's Equity Jurisprudence, goes on to say: ''That author, in the same section, thus states the rule as to the application of the equitable maxim, 'He who comes into equity must come with clean hands': 'It says that whenever a party, who, as *actor,* seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' ''

It is equally apparent that this same doctrine may not be invoked against appellant in her action to quiet title to the entire property for the reason that the record is barren of any evidence tending to show that appellant was ever told or understood that respondent's purpose in conveying her half-interest to appellant was to vest title in her only temporarily so that the property would not be subject to seizure by Everett's creditors; and at the time of oral argument on this appeal counsel for respondent conceded that there was no such evidence. Moreover, it cannot be successfully maintained that appellant is retaining title in fraud of Everett's bank creditors for the reason that at the time of the execution and delivery of the deed in question she herself was a bona fide creditor of his to the extent of $23,500; and it is well settled that a pre-existing debt is sufficient consideration for a transfer of property and that such a transfer cannot be attacked by one creditor simply because the transferor has seen fit to give a preference to another creditor, even though the debtor is thereby rendered insolvent. *(Bradley* v. *Butchart,* 217 Cal. 731 [20 P.2d 693].)

The final point urged by respondent against appellant's right to a judgment in her favor quieting title to the entire property is that appellant failed to produce evidence

legally sufficient to establish a trust. But the record shows that appellant did not rest her claim to a judgment solely on that ground. The main basis of her claim was that the deed executed and delivered by respondent and Beatrice constituted a valid transfer to her of full ownership in the property; and the evidence was legally sufficient to sustain a judgment in her favor on that basis of the claim.

Appellant urges other grounds in support of the appeal, but in view of the conclusions reached on those above discussed, it becomes unnecessary to inquire into the merits of the others.

The judgment is reversed.

Peters, P. J., and Ward, J., concurred.