Argued Feb. 23, decided March 12, conditionally modified April 9, rehearing denied May 21, 1912.

## WRIGHT v. CHILCOTT.

[121 Pac. 895: 122 Pac. 765.]

VENDOR AND PURCHASER—CONTRACTS—INTEREST OF PURCHASER.

1. A purchaser of real estate who has made a partial payment of the price has an equitable interest which he may convert into a legal title by paying the balance of the price, but which may be defeated on his failure to pay such balance.

TRUSTS—RESULTING TRUSTS—EVIDENCE.

2. Defendant contracted to take over plaintiff's options to purchase real estate, to complete plaintiff's contracts by advancing the price, and take conveyances to himself, to dispose of the property to the best advantage, and divide the profits equally. Plaintiff had made a partial payment. *Held*, that the contract created a resulting trust in favor of plaintiff to the extent of his interest, and the fact that on the purchase of the land the deed was drawn in the name of a third person designated by plaintiff did not destroy the trust relation; the third person taking the title subject to the burdens imposed on it.

TRUSTS— RESULTING TRUSTS—CONTRACTS—VALIDITY.

3. Plaintiff was the owner of options for the purchase of land for $13,200. He paid $1,000 of the price, and then defendant contracted with him to complete the contracts by advancing the money, and taking the title to himself. The contract between the parties contemplated the formation of a holding corporation with a capital stock of $250,000 to take over and dispose of the property. The parties contemplated extensive improvements, and that in selling the property to the corporation the sale should be made for preferred stock and the whole issue of the common stock. *Held,* that the agreement between the parties did not contemplate a violation of the law which does not presume that parties intend to contract to do a fraudulent act when such ·intent is not made plainly manifest, and the agreement creating a resulting trust was enforceable.

TRUSTS—RESULTING TRUSTS—PRESUMPTIONS.

4. A trust may result from a grant or contract the purpose of which is incapable of performance, and, where the instrument provides indemnity for expenses of the grantee out of the corpus of the property conveyed, a trust will be presumed.

TRUSTS—RESULTING TRUSTS—REIMBURSEMENT OF EXPENDITURES.

5. A person who, relying on the invalidity of that part of a contract by which he agreed, on taking over options to purchase land, to take conveyances in his own name and divide the profits with his assignor, and, believing that it did not create a resulting trust, made expenditures on the land, is not entitled to be reimbursed for his losses out of the proceeds of a sale directed by the court adjudging the existence of a resulting trust, but is entitled to be reimbursed for the value of permanent improvements ehancing the value of the land and expenditures for taxes, unless the receipts from the land have been sufficient to cover such expenditures.

APPEAL AND ERROR—MODIFICATION OF DECREE—TERMS.

6. Where a defendant, neglecting to litigate a matter in the original case, applied in the appellate court for a modification of a decree to enable him to litigate such matter, the court on granting the application, will ·require him to pay money to the clerk for the use of plaintiff who will incur expense in litigating the matter, and, in default of such payment, the original decree will stand.

From Yamhill: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a suit by C. T. Wright against Richard Chilcott and J. E. Anderson to have a trust in certain lands declared in favor of plaintiff.

The complaint alleges, in substance, that on or prior to November 30, 1908, plaintiff was the owner of two

options or contracts for the purchase of certain lands in Yamhill County and at that time entered into a contract with defendant Chilcott, whereby it was agreed that the latter should furnish the money necessary to complete the purchase of the lands, pursuant to the provisions of the options, and that thereafter the land should be sold and conveyed to a corporation, thereafter to be formed, which should handle and dispose of the property for the benefit of plaintiff and Chilcott; that from the proceeds of the sale Chilcott should be reimbursed for the necessary advances to be made by him, and also that the sum of $1,000, theretofore advanced by plaintiff upon the purchase, was to be reimbursed, one half of that amount to be paid to Chilcott and the other half to plaintiff; that the balance of the money realized from such sale should be equally divided between plaintiff and defendant Chilcott; that the land should be conveyed to the corporation, so to be formed, in payment of the capital stock of such corporation, to be subscribed by plaintiff and Chilcott, the amount to be equal to the reasonable cash value of the property, to be agreed upon by plaintiff and Chilcott; that the latter should take, in payment of the amount required to be advanced by him for the purchase price of the property, the paid-up stock of such corporation, equal in amount to the money advanced by him; that plaintiff and Chilcott should each take $500 in stock in payment of the $1,000 advanced by plaintiff; that thereafter the remaining stock should be equally divided between plaintiff and Chilcott, except such additional shares as might be sold or disposed of by agreement to other persons; that the actual cash value of the property was $40,000, and the value thereof over and above the sum agreed to be paid therefor was $26,800, which was to be equally divided between plaintiff and Chilcott, either in money or in the stock of the proposed corporation; that,

pursuant to the agreement, Chilcott paid for the property, in addition to the $1,000 paid by plaintiff, the sum of $7,200, and caused the title to the property to be conveyed to his niece, J. E. Anderson, who was to hold the same in trust for himself and plaintiff, and caused mortgages to be executed by Anderson for $5,000, the balance of the purchase price; that, contemporaneously with the taking of the deeds, Anderson executed deeds to the property, leaving the name of the grantee blank, and delivered them to Chilcott with verbal authority to fill in the name of such grantee as to him should seem best, it being the intention of all the persons to insert the name of the corporation thereafter to be formed; that Chilcott has taken possession of the property, has excluded plaintiff thereform, has refused to join in the formation of the corporation, and now denies that plaintiff has any interest whatever in the property, and on the contrary claims to be the sole owner thereof, and that he will, unless restrained, dispose of the same for his own benefit. To this complaint defendants answered by a general denial, except that they admitted that defendant Anderson held the property in trust for Chilcott, and that he was in possession and control thereof. Defendants also denied that the property was worth more than $13,200.

The following agreement signed by plaintiff and defendant Chilcott was introduced in evidence:

"This agreement witnesseth: That whereas C. T. Wright of Portland, Oregon, obtained an option for the purchase of a parcel of land situated in Yamhill County, from the owner thereof, to wit, Henry Stutsman, the condition of said option being that one thousand dollars should be paid in cash, four thousand dollars on or before December 1st, 1908, and balance on or before three years, to be evidenced by a promissory note and secured by a mortgage on the property. Simultaneous with obtaining the said option the said Wright conveyed a like option on like conditions on the same property to

Messrs. Swenson and Glein, who paid the one thousand dollars called for, which same thousand dollars was used by Wright to pay Stutsman. The said Swenson and Glein having failed to make the second payment required, to wit, four thousand dollars, by virtue of the conditions of their option with Wright their option to purchase the land becomes void. Now cometh Richard Chilcott of Portland, Oregon, who agrees with the said Wright, for the purpose of saving the afore-mentioned thousand dollars and other considerations, to make the said second payment of four thousand dollars, fulfill all other conditions of Stutsman's option to Wright, and take delivery of a deed for and possession of the land. The further terms of this agreement between the said Wright and the said Chilcott are that the land is to be disposed of to a corporation formed for the purpose of handling and disposing of the same, at an agreed price, and the difference between the price paid by Chilcott for the land and the price received from the said company, except as hereinafter provided, shall be divided equally between each, share and share alike; included for division is also the aforesaid sum of one thousand dollars paid by Swenson and Glein to Wright and by Wright to Stutsman. Included in this agreement, on the same conditions, is the property adjoining that of Stutsman, now belonging to George Braithwaite, which the said Chilcott is now purchasing. It is the present intention to form a company with a capitalization of $250,000, with two classes of stock, an equal amount each of perferred and common stock. In selling these lands to the company, the sale will be made for a stipulated amount of perferred stock and the whole issue of the common stock; therefore the cash paid out would receive its proportion of preferred stock at its par value and the balance is to be divided between the said Wright and the said Chilcott, and the whole of the common stock is to be apportioned *pro rata* between the several interests at the same ratio on which the perferred stock issued is apportioned, excepting as hereinafter noted. As the parties at interest are now seeking other capital, and, should any be secured, the apportionment of stock would be entirely different, as in all probability there would be two fixed prices on the lands. For instance, the said

Wright and Chilcott set a price to the other money sub-scribers and they in turn might wish to make a greater price to the company and participate proportionately in the difference, wherefore the same rule would apply as between Wright and Chilcott, but not on the ratio as above stated, and to which this exception is noted; that is to say, the difference in profits would be measured by the difference in price paid by Chilcott and that received from the syndicate, and not the price received from the company as stated above. Inasmuch as large amounts of money will be required to cultivate, stock and otherwise operate these farms, which the said Chilcott agrees to provide, the amount of money so furnished is to be com-pensated for with preferred and common stock in the same proportion as the money provided for the purchase of the land. It is further provided that inasmuch as moneys will be expended from time to time, to what extent cannot at this time be told, the above apportionment can-not be made until the personal expenditures of the said Chilcott ceases; therefore, to have all the interests prop-erly defined, should there be no valid objection apparent, the agreed proportion may be made of record with the company, or otherwise the terms of this document stand. It is stipulated and agreed that no stock, either preferred or common, shall be issued to either parties hereto until the said Chilcott has been fully reimbursed for the moneys he expends for the purchase of land, as well as for all other purposes, on behalf of the company to be formed."

AFFIRMED.

For appellants there was a brief over the names of *Mr. Ralph E. Moody* and *Messrs. McCain & Vinton*, with an oral argument by *Mr. A. E. Clark*.

For respondent there was a brief over the names of *Messrs. Beach & Simon, Mr. Charles W. Fulton* and *Mr. George C. Fulton*, with an oral argument by *Mr. Charles W. Fulton*.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The evidence tends to show that at the time the agree-ment above recited was entered into plaintiff had a valid

option or contract of purchase for one tract of the land in question, which for convenience we will call the Stutsman tract, and that he had paid upon the purchase price the sum of $1,000, leaving $6,000 to be paid before he would be entitled to a conveyance, and that he had a verbal option for the purchase of another tract called the Braithwaite tract for the sum of $6,200, upon which nothing had been paid, and which depended for execution solely upon the good faith of the vendor.

1. He had an equitable interest or estate in the first tract which he could convert into a legal title by paying the remainder of the purchase price but which was liable to be defeated in case of failure on his part to pay the purchase money. That these rights and the services he had rendered in securing them were of some value and so considered by Chilcott is shown by the fact that he entered into the written agreement, and the value of these is impliedly fixed at one-half the net profits of the venture after deducting the amounts advanced by the parties.

2. The agreement itself is a peculiar document, evidently drawn without the aid of counsel, and contains an amount of unnecessary verbiage; but divested of its superfluities it amounts to this: (1) That Chilcott was to take over the options, rights, and opportunities of Wright, and to complete Wright's contracts by advancing the purchase money, and to take conveyances to himself of the tracts of land, and also to make such further advances as might from time to time be necessary to effectuate the purpose of the contract, which was to dispose of it to the best advantage. (2) That out of the sale of the land he was to be reimbursed for such outlays. (3) That, when this was accomplished, the profits of the adventure were to be shared equally. (4) That the contract contemplated the formation of a holding corporation which should take over the property at an agreed price and the division of stock

to be issued by such corporation in proportion to the interest of the parties and such other parties as might be induced to buy into the venture.

To complete the purchases initiated by Wright required $12,200 in addition to the $1,000 already paid by Wright, and this sum was to be advanced by Chilcott. To secure him in these advances, he was authorized to take the conveyance of the property and hold it until it should be so disposed of as to repay his advances, and what remained after this was done was to be divided between the persons concerned. To secure this result, a method of disposing of the property to a holding corporation and a division of stock was tentatively agreed upon. It is true that a division of profits by this method could not be enforced in equity and rested solely in the good faith and honesty of the persons and it was not impossible of performance and was entirely practicable. In our opinion the contract created a resulting trust in favor of Wright to the extent of his interest in the contract, and, as that interest was to come out of the land, it was a trust in the land. The fact that the deed was taken in the name of another person designated by Chilcott instead of being taken directly to him did not destroy the trust relation. The "dummy" grantee took the title subject to the same burdens as though Chilcott himself had taken it. It is immaterial whether the trust was a trust in the lands or in the profits to be derived from their sale, as in either case the lands should, in equity, be charged with the obligation, although the authorities, which hold that contracts of this character create an interest in the land itself, appeal to us as sound and consonant with equity. *Shaeffer* v. *Blair,* 149 U. S. 248 (13 Sup. Ct. 856: 37 L. Ed. 721) ; *Seymour* v. *Freer,* 8 Wall. 202 (19 L. Ed. 306).

3. The contention that the method or disposal of the property set forth in the contract contemplated a violation

of the law, and is therefore illegal, cannot be sustained. It is true that the contract contemplated the incorporation of a company with a capital stock of $250,000 to take over and dispose of the property, and that the property at that time was not of that value nor approaching thereto. There is nothing in the agreement to indicate an intention to sell the property to the corporation for $250,000 or for any particular sum. In one paragraph of the contract it is said:

"The land is to be disposed of to a corporation formed for the purpose of disposing of the same at an agreed price," etc.

And again:

"In selling these lands to the company, the sale will be made for a stipulated amount of preferred stock and the whole issue of the common stock."

It is evident that extensive improvements and the probable expenditure of large sums of money in addition to the purchase price were within the contemplation of the parties when the agreement was signed as shown by the following paragraphs:

"Inasmuch as large amounts of money will be required to cultivate, stock, and otherwise operate these farms, which the said Chilcott agrees to provide, the amount of money so furnished is to be compensated for with perferred and common stock in the same proportion as the money provided for the purchase of the land."

"It is further provided that inasmuch as moneys will be expended from time to time, to what extent cannot at this time be told, the above apportionment cannot at this time be made until the personal expenditures of the said Chilcott ceases; therefore, to have all the interests properly defined, should there be no valid objection apparent, the agreed proportion may be made of record with the company, or otherwise the terms of this document stand."

While this is about as indefinite as a prophecy from the Delphic oracle, it seems to indicate that substantial sums in the way of improvement of the property and its consequent enhancement in value might be expended before its sale or transfer to the proposed corporation, and does not show or indicate any intention to issue or float fraudulently watered stock. The law does not presume that parties intend to contract to do a fraudulent or illegal act when such intent is not made plainly manifest.

The case stands thus: Chilcott has received from plaintiff the advantage derived from his contract of sale as to the first tract, together with the $1,000 payment made by him thereon and the advantage of his verbal option as to the second tract, with the promise on his part in return to turn these over to a prospective corporation for the benefit of himself and plaintiff. He now says in effect:

"You cannot compel me to participate in the formation of the proposed corporation. Therefore I will retain all these advantages and give you nothing."

This is not equity nor even common honesty, and no court can sanction such conduct.

4. A trust not infrequently results from a grant or contract, the purpose of which turns out to be incapable of performance or of specific enforcement . Perry, Trust (6 ed.) §§ 159, 160. And, where the instrument, will, or conveyance makes provision for indemnity for expenses of the grantee out of the corpus of the property conveyed or devised, a trust will be presumed. *Saltmarch* v. *Barrett,* 3 De Gex, F. & J. 279. The trustee having refused to execute the trust and denying its existence, it is the province of a court of equity to see that plaintiff has relief, and the decree of the circuit court is therefore affirmed.                                        Affirmed.

Decided April 9, 1912.

## ON PETITION FOR MODIFICATION.

[122 Pac. 765.]

MR. JUSTICE MCBRIDE delivered the opinion of the court.

A petition has been filed by defendant Chilcott suggesting that our decree herein be modified so as to permit him to have a hearing in the circuit court as to amounts expended by him upon the property up to the date of our decree.

5. It is set up by affidavit that he has expended in fencing, constructing buildings, clearing land, stocking, and cultivating the place, and paying taxes and insurance $31,500, and that his receipts have been $14,000. He therefore seeks reimbursements for his outlay in excess of receipts and for his personal services in superintending the property.

No claim for these items was set up in the court below. The defendant simply stood upon the defense that the agreement made with Wright was void, and that as a consequence defendant was the sole owner of the property. This defense was in our opinion bad in law and unconscionable in morals. The defendant did not occupy the premises for the purpose of carrying out his agreement with Wright, but for his own purposes to the exclusion of Wright. He spent money upon it and cultivated it for his own benefit, and not for the benefit of his co-owner, and appropriated the proceeds to his own use. If, therefore, his venture has not proved financially profitable, he has no right to ask plaintiff to share his losses. Notwithstanding his abuse of his trust, however, if he has made improvements which will add to the permanent value of the land, so that it will bring a greater price at a sale than it would have brought had such improvements not been made, he is entitled to the value of such permanent im-

provements out of the proceeds of the sale, and should also be reimbursed for all taxes paid by himself, unless the receipts from the farm have been sufficient to cover all his expenditures in cultivation and carrying on the place and the value of permanent improvements and taxes paid as well.

The cause will therefore be remanded to the circuit court with directions to allow the defendant to file a supplemental answer, showing the value of permanent improvements affixed by him to the land, which will increase its selling price, and also the amount of taxes paid by him, to the end that an issue may be framed and tried as to these matters alone, as indicated in this opinion, and that as to all other matters the original decree shall stand.

6. As the defendant could have litigated most of these matters in the original case and his neglect to do so will put plaintiff to additional annoyance and expense, this modification will be made upon terms, namely, that defendant on or before the 26th day of April, 1912, pay to the clerk of this court, for the use of plaintiff, the sum of $150. In default of such payment, the original decree of this court will stand.

AFFIRMED: CONDITIONALLY MODIFIED: REHEARING DENIED.