[L. A. No. 19779.   In Bank.   July 8, 1947.]

NADINE BERNIKER, Respondent, v. BARNETT BERNI-
KER et al., Defendants; NATHAN BERNIKER, Appel-
lant.

Samuel Schekman, Walker, Meyers, Ingram & Moser and Hubert O. Butler, Jr., for Appellant.

William Christensen and Barry B. Stepsay for Respondent.

SPENCE, J.—By her original complaint, plaintiff sought separate maintenance from her husband, Barnett Berniker, and a division of the community property. In pursuance of this latter purpose, plaintiff joined her father-in-law, Nathan Berniker, as a defendant upon allegations that he held such property in his name and that her husband had so placed it

"in order to defeat the claims of judgment creditors." Defendants filed a joint answer denying the allegations of the complaint. At the conclusion of the trial, plaintiff amended her complaint, thereby seeking a divorce from defendant Barnett Berniker but making the same allegations concerning the community property as were contained in the original complaint except for (1) the express addition of the statement that "defendant Nathan Berniker has no right, title, or interest therein other than and except the naked legal title as trustee for" plaintiff and her defendant husband; and (2) the complete elimination of any reference to the purpose of such property holding as related to the avoidance of creditors. Defendants likewise amended their answer in categorical denial of plaintiff's claims and specifically alleged that "the property standing in the name of Nathan Berniker is his sole property." These amended pleadings were framed to conform to the proof and the court made its findings in response thereto. Accordingly, the court found that a "ladies' ready-to-wear business" in Santa Monica and a "bank account for said business," both of which stood "in the name of defendant Nathan Berniker," together with "the lease" in "the name of both defendants" on the premises where said business was located, were community property of plaintiff and her defendant husband, and that defendant Nathan Berniker had no interest therein "except the naked legal title as trustee" for plaintiff and her defendant husband.

An interlocutory decree of divorce was granted to plaintiff, awarding to her one-half of the community property and directing Nathan Berniker to transfer and assign to her an undivided one-half interest in the specified "ladies' ready-to-wear business," "the lease," and "the bank account." The propriety of this adjudication is challenged only by defendant Nathan Berniker, who has appealed from the entire judgment except that portion granting a divorce to plaintiff.

As grounds for reversal appellant contends: (1) that the evidence was not sufficient to sustain the findings as to community property; (2) that the trial court erred in establishing a trust in favor of respondent; (3) that respondent's claim was barred by the statute of limitations and by laches; and (4) that appellant in any event should be allowed credit for money invested by him in the business. The record does not support appellant on any of these points.

Respondent and defendant Barnett Berniker were married in 1927. For some years after the marriage he worked in Los

Angeles, first as a manufacturer's representative in ladies' ready-to-wear, and then in several retail dress stores in and about the same vicinity. In 1932, he opened a retail dress shop in Hollywood. Some 6 months thereafter the business was incorporated and the capital stock was issued to various members of the respective families of respondent and himself. About 3 years later the corporation acquired a store in Santa Monica. In 1937, the Hollywood shop was sold because "business was bad" and the attorney who acted as the escrow holder testified that the entire amount realized on such sale was used to pay pro-rata shares to the creditors of the corporation. There then followed a "big sale" of merchandise in the Hollywood store and the proceeds therefrom were likewise used to pay the creditors' claims. The balance of the stock remaining after such close-out sale was removed to the Santa Monica shop for disposal. But the Santa Monica business also failed to prosper, and within a few months an assignment of the corporation's assets was made for the benefit of creditors. Then in 1938, the Santa Monica store was sold at public sale to appellant.

There is a sharp conflict in the evidence as to whether appellant purchased the Santa Monica store with his own funds or with money furnished by Barnett Berniker. Appellant is a retired building contractor without knowledge of or experience in retail merchandising of wearing apparel. He and Barnett Berniker testified that the business was bought with appellant's personal funds, and that following the purchase, Barnett Berniker was placed in charge of the store as manager for appellant. On the other hand, respondent testified that she saw her husband, Barnett Berniker, give appellant the purchase money as part of the arrangement for appellant "to bid in" the store at the public sale, and that after the store was so acquired, her husband conducted it as his own personal business. While respondent added that the purchase money so given appellant by her husband represented part of the proceeds of the sale of the Hollywood store, this statement conflicts with the testimony of the attorney acting as the escrow holder upon such sale that "all" the proceeds thereof were used to pay creditors of the corporation. The parties to this appeal have since stipulated concerning this discrepancy, which stipulation is in accord with the testimony of the attorney, who was called as a witness for the defense. But this same attorney also acted as "attorney for the assignee of

the corporation's assets'' when the Santa Monica store was sold and he further testified that when that sale was made, his dealings were entirely with Barnett Berniker and that the latter stated that ''he was starting this business and he was going to put it in his father's name.'' This coincides with testimony of respondent and her witnesses that appellant upon several occasions acknowledged that the Santa Monica business belonged to his son, Barnett Berniker. For example, respondent stated that she heard appellant at one time say to her husband, Barnett Berniker: ''You will come to no good. A man in business cannot gamble. Why don't you take the business from my name? I don't want the business in my name. It will cause me headaches and trouble all the time.'' Respondent's father testified that on one occasion appellant told him: ''The business does not belong to me and I wish he [Barnett Berniker] would put everything in his name and I would not have any headache.'' Referring to another conversation with appellant, the same witness testified that appellant said: ''I wish he [Barnett Berniker] would take off from my head these headaches. This business is his. It does not belong to me.'' And at another time respondent stated that appellant said in her presence that he did not want the business in his name and that ''it was Barney's business,'' to which the latter replied: ''Well, when the war is over I will make a corporation out of it, or I will take it off of your name.''

The finances of the business were handled through the bank account which is in controversy here. During the years following appellant's purchase of the Santa Monica store, the enterprise proved to be a successful one, with a gross annual business for the years 1943 and 1944, ranging from $75,000 to $100,000 and net profits for the respective years fixed at $5,900 and $6,900. Appellant testified that he gave the net profits to Barnett Berniker. Appellant knew nothing about the operation of the store; he did not know the amount of the sales made for cash and the amount on credit. Barnett Berniker hired and discharged the employees and paid bills for gas, electricity and other expenses of the business. Not until after the commencement of this action was any social security, withholding tax or unemployment insurance withheld on account of Barnett Berniker.

Appellant argues that by reason of discrepancies found in respondent's statements and by reason of testimony adduced

from other witnesses, respondent is unworthy of belief and consequently there is no credible evidence to uphold the finding that community funds were used to purchase the business which stands in appellant's name. But respondent unequivocally testified that she saw her husband, Barnett Berniker, give appellant the purchase money; and the reasonable inferences which would arise from such positive statement are not dispelled by respondent's mistake in her testimony in assigning the proceeds from the sale of the Hollywood store some months previously as the source of the money coming into her husband's hands for the purchase of the Santa Monica business upon its subsequent public sale. The significance of that discrepancy was a detail for the trial court to evaluate in relation to the considerable evidence in the record corroborative of respondent's position that appellant held merely legal title to the property in question, and was not the real owner thereof. It must be remembered that the trial court was face to face with the witnesses and had the opportunity to judge, from their demeanor on the stand and their manner of testifying, which of those giving positive testimony were worthy of credence. As has so frequently been said, it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof. (*Gates* v. *McKinnon,* 18 Cal.2d 179, 180 [114 P.2d 576] ; *California Employment Com.* v. *Betthesda Foundation,* 54 Cal.App.2d 348, 350-351 [128 P.2d 874] ; *Morrison* v. *Willhoit,* 62 Cal.App.2d 830, 836 [145 P.2d 707] ; *Buckhantz* v. *R. G. Hamilton & Co.,* 71 Cal.App.2d 777, 779-780 [163 P.2d 756].) It is not the province of the reviewing court to analyze conflicts in the evidence. (*Berger* v. *Steiner,* 72 Cal.App.2d 208, 213 [164 P.2d 559].) Rather, when a finding of fact is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted, which will uphold the disputed finding. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) So viewing the record here, there is substantial evidence, though contradicted, sustaining the finding that the Santa Monica business, the lease and the bank account are com-

munity property, and that appellant holds such property in his name as trustee for respondent and her husband. Accordingly, appellant's challenge of the evidentiary support for such findings cannot prevail.

■ Nor is there merit to the claim that considerations of fraud vitiate the propriety of the trial court's establishment of a trust in favor of respondent with respect to the community property. In her original complaint for separate maintenance, respondent charged that her husband, Barnett Berniker, had placed the community property in the name of his father, Nathan Berniker, "in order to defeat the claims of judgment creditors." Relative to that allegation, respondent testified that when her husband gave to his father the money with which to purchase the Santa Monica store, he stated to the latter in her presence that he could not have "the business in [his] name on account of the bankruptcy and on account of the creditors." Both appellant and Barnett Berniker, in their joint answer and at the trial, denied that the property holding in question was in any way related to an attempt to "defraud creditors." Then respondent filed at the conclusion of the trial an amended complaint for divorce, wherein she merely alleged that the community property stood in the name of appellant, Nathan Berniker, but that he "has no right, title, or interest therein other than and except the naked legal title as trustee for" respondent and her husband, Barnett Berniker. Of significance in the amended complaint is the absence of any reference to the reason or purpose motivating appellant's alleged trusteeship. The amended pleading superseded the original complaint; it was expressly filed "to conform to the proof"; the trial court made its findings in response thereto and declared a trust in respondent's favor as to an "undivided one-half interest" in the community property. However, despite this agreement of the parties, through their pleadings, that no element of fraud entered into the transaction in question and the consequent elimination of that issue in the determination of this case, appellant now argues that respondent is not entitled to relief because she does not come into court with clean hands. He cites respondent's above-mentioned testimony as establishing her as a party to a fraudulent property arrangement, and he invokes the rule stated in 12 California Jurisprudence 1026 that "One who has transferred his property

in order to defraud his creditors cannot thereafter recover from his grantee that which he has conveyed." There can be no doubt of the rule of law thus invoked, but respondent's testimony does not support its application to this case.

It must be remembered here that the transfer in question concerned "community personal property" as to which respondent's husband had "the management and control," with "absolute power of disposition," provided that he did not make a gift thereof nor dispose of it without a valuable consideration. (Civ. Code, § 172.) Within the purport of this statutory provision, respondent was in no position to interfere with or prevent her husband's use of community funds to effect a property holding in appellant's name though such arrangement stemmed from a plan to "defraud creditors" and she had knowledge of such fraudulent purpose. Wholly distinguishable from such situation are cases cited by appellant on the proposition that a *transferor* will be denied relief in equity against his *own* conveyance in fraud of creditors. (*Tognazzi* v. *Wilhelm,* 6 Cal.2d 123, 125 [56 P.2d 1227]; *Withrow* v. *National Surety Co.,* 122 Cal.App. 242, 245 [10 P.2d 83]; *Morrison* v. *Willhoit, supra,* 62 Cal.App.2d 830, 837; *Taylor* v. *Bank of America,* 67 Cal.App.2d 59, 67 [153 P.2d 617]; see, also, *Allstead* v. *Laumeister,* 16 Cal.App. 59, 65-66 [116 P. 296].) Nor does the case of *Saint* v. *Saint,* 120 Cal.App. 15 [7 P.2d 374], appear "so similar in its fundamental facts" as to fortify appellant's argument. There the wife, after her husband's death, sought a reconveyance of his interest in his father's estate which he had transferred to certain members of his family "for the purpose and with the intent of putting whatever property he might inherit . . . beyond the reach of his creditors." In denying her relief the court said at page 22: "She could no more assert title to the property than could he [her husband], regardless of whether or not she knew of the fraud. The original transaction, being fraudulent, remains tainted not only to the parties to the transaction, but as to all persons claiming under them. . . ." But here respondent is not asserting a claim to her husband's separate property so that she would be bound by his fraudulent acts; rather, she is seeking to establish a trust in connection with "community property," in which "the respective interests of the husband and wife . . . during continuance of the marriage relation are present, existing and equal. . . ." (Civ. Code, § 161a.) Her lawful interest in the

community property should therefore not be affected by a fraudulent purpose of her husband in consummating a transfer of such property as here involved. Though she testified that she heard her husband tell appellant that the transfer was necessary ''on account of the creditors,'' such knowledge would not impair her standing in court, for she in any event was powerless to exercise any control in the matter. This situation is in nowise akin to cases where the husband has made an unauthorized transfer of community real property (Civ. Code, § 172a) and the wife has been estopped to set it aside to the prejudice of ''innocent purchasers for value.'' (*Vierra* v. *Pereira,* 12 Cal.2d 629 [86 P.2d 816]; *Mark* v. *Title Guarantee & Trust Co.,* 122 Cal.App. 301 [9 P.2d 839]; *Bush* v. *Rogers,* 42 Cal.App.2d 477 [109 P.2d 379]; *MacKay* v. *Darusmont,* 46 Cal.App.2d 21 [115 P.2d 221].)

Likewise without force is appellant's assertion that respondent's recovery is barred by the ''statute of limitations'' and by ''laches.'' The Santa Monica store was purchased in the name of appellant in ''July or the early part of August, 1938.'' This action was commenced in January, 1945. In his amended answer appellant pleaded the 3-year statute of limitations. (Code Civ. Proc., § 338, subds. 3 and 4.) The trial court resolved the conflict between the parties in accordance with respondent's claim that her husband gave to appellant community funds which the latter was to use, and did use, in purchasing the Santa Monica business. While the trial court did not classify the trust thereupon found to exist in respondent's favor, the accredited evidence clearly stamps it as a voluntary resulting trust, continuing in nature as reflecting the intention of the parties at the time of its creation. (*Bainbridge* v. *Stoner,* 16 Cal.2d 423, 428 [106 P.2d 423].) Speaking to this point, the court said in *Lezinsky* v. *Mason Malt W. D. Co.,* 185 Cal. 240, at page 251 [196 P. 884]: ''A resulting trust is not founded on the simple fact that money or property of one has been used by another to purchase property. It is founded on a relationship between the two, on the fact that as between them, consciously and intentionally, one has advanced the consideration wherewith to make a purchase in the name of the other. The trust arises because it is the natural presumption in such a case that it was their intention that the ostensible purchaser should acquire and hold the property for the one with whose means it was acquired.'' In the absence of a repudiation by the

448

trustee, the statute of limitations does not begin to run against a voluntary resulting trust. (*Lamb* v. *Lamb*, 171 Cal. 577, 581 [153 P. 913]; *England* v. *Winslow*, 196 Cal. 260, 271 [237 P. 542]; *Leviston* v. *Tonningsen*, 212 Cal. 656, 664-665 [299 P. 724]; *Cohn* v. *Cohn*, 7 Cal.2d 1, 8 [69 P.2d 969].) Equally pertinent here is the statement in *Dillon* v. *Cross*, 5 Cal.App. 766, at page 769 [91 P. 439]: ''The case made by the pleadings and the evidence was a continuous trust, and the statute of limitations did not commence to run until demand [upon the trustee] and [his] refusal to account.''

The record shows that prior to the commencement of this action there never had been a demand upon appellant to account for or to convey the property to the rightful owners and he had never repudiated his trust until he filed his answer herein. On the contrary, as the evidence is above reviewed, appellant acknowledged upon various occasions that he did not want the Santa Monica business in his name, that it did not belong to him but to his son, Barnett Berniker. Moreover, appellant was never in possession of the store. Rather, Barnett Berniker was in possession and conducted the business in the same manner as if he had always owned it. No one else ever had charge of it. The statute of limitations never runs in favor of a trustee as against the beneficiary while the latter is in possession of the property. (*Gilbert* v. *Sleeper*, 71 Cal. 290, 294 [12 P. 172]; *McClure* v. *Colyear*, 80 Cal. 378, 380-381 [22 P. 175]; *Peixouto* v. *Peixouto*, 40 Cal.App. 782, 786 [181 P. 830].) Material in this connection is the fact that inasmuch as her husband was in possession and had sole charge of the Santa Monica business, there appears to have been no reason for a demand by respondent that appellant transfer the legal title of the property to her and her husband. The occasion for such demand did not arise until conditions caused respondent to institute this action and to advance her claim for a share in the community property.

Nor is the defense of laches available here, for it is plain that no legal prejudice was caused to appellant by reason of the delay in making a demand nor by reason of the nonenforcement of the trust. (*Title Insurance & Trust Co.* v. *Ingersoll*, 158 Cal. 474, 486 [111 P. 360].) Moreover, the facts and circumstances of this case suggest other grounds for the rejection of the doctrine of laches: It is not applied strictly between near relatives (*Butler* v. *Hyland*, 89 Cal. 575,

582 [26 P. 1108] ; *Rottman* v. *Rottman,* 55 Cal.App. 624, 632 [204 P. 46] ) ; it is of little significance in the case of a resulting trust (*Moultrie* v. *Wright,* 154 Cal. 520, 526 [98 P. 257] ) ; and "it is not designed to punish a plaintiff" but is "invoked only where a refusal would be to permit an unwarranted injustice." (*Hiett* v. *Inland Finance Corp.,* 210 Cal. 293, 300 [291 P. 414].) To this latter point, the court said in *Hovey* v. *Bradbury,* 112 Cal. 620, at page 625 [44 P. 1077] : ". . . it is never permitted to be invoked merely to aid a faithless trustee in consummating his wrong."

Finally, to be considered is appellant's claim of a "right to reimbursement" as a trustee who has expended moneys in the management of a trust estate. (Perry on Trusts and Trustees, 7th ed., vol. II, § 913.) Appellant argues that he advanced several thousand dollars of his personal funds for improvements in the Santa Monica store and for the purchase of merchandise, for which investments he seeks credit before a division of the trust property is made between respondent and her husband, Barnett Berniker. ■ This matter of accounting was first raised by appellant in his opening brief and was not answered by respondent. But the mere fact that respondent did not discuss such belated demand by appellant is no reason for allowing it nor for holding that respondent has thereby confessed the point, and the cases cited by appellant do not so hold. Thus, *Campbell* v. *Ingram,* 37 Cal.App. 728, 731 [174 P. 366], merely states the recognized rule that a finding is not required upon facts that are admitted in the *pleadings.* And *Atwood* v. *Hammond,* 4 Cal.2d 31, 46 [48 P.2d 20], refers to a statement of fact made in the brief of one party and not contradicted by the other, and the reviewing court accepted such statement as true. But the decision does not hold that a point of law advanced by one litigant and unanswered by the other must be adopted by the court as correct.

■ Appellant in his original answer did not plead that he had made any advancements on account of the Santa Monica store but restricted himself to a simple denial of the allegations contained in the complaint. At the trial appellant testified as to certain investments that he had made in the business : $3,000 in 1938 for the purchase of merchandise ; $1,740 in 1940 for the repairs of the store front; and $12,000 in 1944 for improvements. These amounts were not correlated with any business records or itemization accounts at-

testing to advancements made by appellant as a trustee or in any other capacity. Then, at the conclusion of the trial, he filed an amended answer to conform "the pleading to the proof" but he made no claim for expenditures despite his testimony in regard thereto. Rather, he rested his whole case upon the premise that there was no trust and that he was the sole owner of the Santa Monica business. From such state of the pleadings and the issues thereby created, it seems reasonable to conclude that appellant's testimony as to his expenditures in connection with the Santa Monica store was proffered, and admitted in evidence, for the single purpose of furthering his claim of absolute ownership of the business and in opposition to respondent's demand for her community interest therein. While the trial court made no direct finding as to the claim for reimbursement now asserted by appellant, it inferentially follows from the findings in favor of respondent that the court gave little credence to appellant's unsubstantiated recital on that point: his casual approximations of large scale investments in the Santa Monica store while at the same time maintaining that he sought no recompense therefor from the profits of the business. Thus, though claiming to have made an investment of $12,000 for improvements in 1944, appellant stated that he gave the entire net profit of the store for that same year, $6,900, to Barnett Berniker, without reference to any accounting allowance in favor of himself. Moreover, while recounting instances of his expenditures in the Santa Monica store, appellant admitted that he knew nothing about the conduct of the business, and that its entire possession, management and operation was in the hands of Barnett Berniker—a situation of unconcern wholly at variance with ordinary business prudence. From its disposition of the entire community property issue against appellant, it inferentially follows that the trial court not only regarded the Santa Monica store to have been purchased with community funds of respondent and her husband, but likewise reasoned that any funds subsequently used in the purchase of merchandise or in improvements for the store came from the earnings of the business, a community asset. In fact, at the close of the trial, upon announcing the terms of the judgment, the court said: "There is not any question but what there has been a lot of perjury in this case." The record supports this declaration and the findings establish the source of the perjury as viewed by the trial court in disposing of the factual

issues before it. To this extent appellant's claim of advancements to the business may be said to have been decided inferentially, by the findings, against him.

Nor do the cases cited by appellant sustain his belated demand for reimbursement under an entirely different theory, in the absence of a pleading that would have afforded respondent an opportunity to controvert his claim as raised in issue. In *Woodward* v. *Wright*, 82 Cal. 202 [22 P. 1118], the defendant admitted "the trust for the benefit of the plaintiff" and *pleaded* in his answer the amount he had expended on the property while under his control. In *Stromerson* v. *Averill*, 22 Cal.2d 808 [141 P.2d 732], the opinion reveals that the parties involved had conducted extensive joint farming operations over a period of years in various relationships: partners, associates, employer and employee, and as a cooperative. In that situation the court at page 816 refers to the "conflicting claims of the parties connected with the acquisition, operation, and development of the property," the trustee's assumption of "personal liability under the contract of purchase from which he should be relieved" and "outstanding obligations" and "expenditures made, by one party for the benefit of the other, in relation to" their joint enterprise. With this factual background, the necessity of an accounting between the parties was before the court as a matter of pleading their respective positions and for the complete adjudication of their rights and responsibilities as so involved.

The remaining case cited by appellant on this point is *Wright* v. *Chilcott*, 61 Ore. 561 [121 P. 895, 122 P. 765], an Oregon decision, wherein, upon special petition, the original decree was modified to permit the trustee to file a supplemental answer showing the value of the permanent improvements that he had placed on the property. Although "no claim for these items was set up in the court below," such claim was wholly reconcilable with the pleadings and with the respective positions of the parties at the time of their original litigation. Thus, plaintiff sought a declaration of trust in certain lands and defendant did not deny the transaction, but urged that because the agreement between the parties involved the doing of certain executory acts which could not be enforced in equity, it was void and defendant should be allowed to retain the property as absolute owner. The parties' agreement was introduced in evidence by plaintiff, and it showed various advancements to be made by defendant and

provision for the latter's reimbursement. So the pleadings as well as the proof and the relationship of the parties disclosed at the trial did not preclude the establishment of the trust and the application of the general rule in recognition of the trustee's right of reimbursement for improvements made in connection with the trust property during the period of his management thereof. Defendant's subsequent filing of his claim for reimbursement, despite his abuse of the trust, was wholly consistent with defendant's position at the trial and the purpose for which proof as to his advancements was made. But here, an entirely different situation prevails: appellant's evidence as to expenditures made in connection with the Santa Monica store was introduced solely in furtherance of his claim of absolute ownership of the business and his unequivocal denial of a trust relationship at any time in regard thereto. Now he seeks reimbursement for such expenditures on a basis wholly irreconcilable with his former position, entirely foreign to the pleadings and the premise of the evidence in the case, and furthermore in challenge of an inferential finding of fact against him as to the verity of his claim of having made such expenditures out of his personal funds. In this distinguishable situation appellant cannot prevail.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.