[Civ. No. 4928. Fourth Dist. May 13, 1955.]

WM. H. HOEGEE INVESTMENT COMPANY (a Corporation), Appellant, v. BURTON BROTHERS, INC. (a Corporation) et al., Respondents.

Borton, Petrini, Conron & Brown and Thomas A. Wood for Appellant.

Baker, Palmer, Wall & Raymond for Respondents.

MUSSELL, J.—This action was brought by plaintiff and appellant Hoegee Investment Company, a corporation, against the defendants Burton Brothers, Inc., et al., for underground trespass. Plaintiff, owner of the Last Chance mining claim in an unorganized mining district in Kern County, alleged in its complaint that the defendants, owners of the Kid lode mining claim, which adjoins the northerly side line of the Last Chance lode mining claim, wrongfully and unlawfully cut, made and excavated certain drifts, openings, crosscuts and underground workings into and under the mining ground of plaintiff and have mined, extracted and removed therefrom large quantities of mineral deposits, ores and other precious metals of great value, to the damage of plaintiff. The prayer of the complaint was for an accounting, judgment and injunctive relief.

Defendants in their answer denied the alleged trespass and alleged that all mineral deposits, ores and other precious

metals they extracted and mined from the area in controversy are and were part of a vein, lode or ledge having its top or apex within the surface lines of the Kid lode mining claim and were the property of the defendants; that the discovery vein, lode or ledge, having its top or apex within said Kid claim, in its easterly and westerly longitudinal course or strike, passes through the entire length of said Kid claim and entirely within the northerly and southerly side lines thereof, and passes through both end lines thereof, and that said end lines are parallel; that said discovery vein, lode or ledge, in its downward course within said Kid claim, departs from the perpendicular on its dip at an angle of from about 45 to 60 degrees from the horizontal in a southerly direction and under the plaintiff's Last Chance lode mining claim via the northerly side line thereof; that any entry defendants have made into the controverted area of plaintiff's claim has been within the southerly projected extension of the parallel and vertical end lines of defendants' claim and has been restricted to following downward on its dip the said Kid discovery vein, lode or ledge having its apex or top within said claim. Defendants denied having removed any mineral deposits, ores, or precious metals from any vein, lode or ledge from the controverted area except as above set forth. The trial court found generally in accordance with these allegations of the defendants and plaintiff appeals.

It is conceded that the only question to be determined here is whether there is any substantial evidence in the record to support the trial court's findings that the vein being worked by the defendants within the side lines of the Last Chance lode claim of plaintiff in fact has its apex within the Kid lode claim owned by the defendants.

The evidence and the maps introduced in evidence by both parties (Plaintiff's Exhibit 1 and defendants' Exhibit 7) show without question that defendants sank a 740-foot shaft described as the ''Kid Shaft'' near the southeast corner of and on the Kid claim about 89 feet north of the compromise line and from this shaft ran crosscuts and drifts and conducted extensive underground mining operations within the side lines of both the Kid and the Last Chance claims. The side lines of these claims run generally east and west and it appears that as a result of a controversy between the parties as to the location of the side line between the two claims a compromise line was established, which is shown on the said maps and is and was accepted by the parties. It further appears from

the evidence and said maps that the defendants excavated several crosscuts and drifts from the Kid shaft, one north and on the 100-foot level for approximately 190 feet, thence southwesterly approximately 250 feet; another north from said shaft on the 200-foot level for approximately 400 feet; one east on the 400-foot level approximately 280 feet; one south and east approximately 120 feet, thence in a general westerly direction and north of the compromise line between the two said claims and on the 400-foot level a distance of approximately 880 feet. The next crosscut and drift is on the 600-foot level southeast approximately 140 feet, thence in a general westerly direction approximately 480 feet; and the last principal crosscut and drift extends south approximately 240 feet from said Kid claim and thence in a general westerly direction approximately 920 feet on the 750-foot level.

James A. Noble, an experienced geologist specializing in mining geology, called as a witness in behalf of the defendants, testified that he had taken several degrees in geology and at the time of the trial had been employed by the California Institute of Technology as a mining geologist and professor of economic geology for six years; that subsequent to 1922 he worked for two years with a zinc company as mining engineer and geologist; that from 1924 to 1931 he worked in Peru for a copper corporation as a geologist in large mining operations and explorations; that from 1931 to 1947 he was chief geologist for the Homestead Mining Company in the Black Hills of South Dakota; that he was still consultant for three mining companies and was engaged in three or four special research jobs, one of which was a study of the geological histories and ore deposits of the Rosamond Hills, which includes the area involved in the present action; that in the fall of 1947 he first visited the claims here involved; that he saw the surface area and studied the maps for use for student instruction and for mapping and geological information for students; that the following spring he began to map the underground workings from the Kid shaft to see what the geology was; that in 1949 and each year since he has taken students in geology underground in the Kid mine to study the underground workings, using some of the maps and photographs in evidence. Dr. Noble pointed out to the court and traced the apex line or top of the lode continuously through the Kid claim from west to east through the end lines of said claim and running approximately east and west. He demonstrated that the apex-outcrop had a strike approximately east-west and a dip of

from 45 to 70 degrees south, averaging about 60 degrees south and stated that he traced the strike himself; that the Kid shaft cut the lode at approximately the 400-foot level and the lode apexes well north of the shaft; that the Tropico lode, which apexes on the surface, is identifiable and continues on the 750-foot level as on the upper level; that the said lode is identifiable and continuous from the surface through the various levels to the lowest extremity on the 750-foot level and is part of the same lode which apexes at the surface of the Tropico lode; that all of the workings underground into the side line of the Last Chance and all minerals removed therefrom were from the Tropico lode.

Frank Royer, a graduate of the Colorado School of Mining, with a metallurgical and mining degree and who owns and operates the Kelly mine extension, testified that he went over the surface of the Kid claim and inspected the 400 and 600-foot levels; that he found the apex of the lode about the center of the Kid claim, parallel to the side lines; that the dip of the lode was on the average of 60 degrees to the south; that from his actual experience and from his examination of the maps and exhibits it was his opinion that the vein is continuous from the dump to the 600 foot level, which was the deepest one which he had seen.

Clifford G. Burton, who graduated from the University of California with a master of science degree in mining engineering, and who was the mining engineer of the entire Tropico mine, including the Kid mine, testified that the Tropico lode on its dip from the apex line is a continuous identifiable lode at all points and places from the apex line down through to the lowest workings. He further testified in detail as to the many samples taken from the 400 and 750-foot levels showing the mineralization of the material taken from the workings.

D. L. Gardner, an experienced geologist specializing in mining, testified that he mapped out the Kid shaft area, the 600-foot stope, the 600 and 400-foot levels, the 200-foot level and part of the outcrop. He traced the apex line of the Tropico lode from west to east through the end lines of the Kid claim and testified that all of the workings laterally into the Last Chance claim were on the Tropico lode, which dips 60 degrees south. He described in detail the characteristics of the lower workings on the Kid claim and as to the many samples taken showing mineralization, and also pointed out the identity of the formation of the lode at the surface and at the lower levels.

Earl Blickenstaff, a mining engineer, testified that he went down into the Kid mine a few days before the trial and also went over the surface; that in his opinion the apex of the Tropico vein goes through both end lines of the Kid claim and has a dip of approximately 60 degrees to the south; that in his opinion, based on his observation of the workings in the Kid claim, there is a continuous identifiable lode from the apex on the surface to the extremities of the lowest extra-lateral workings.

■ It is apparent from the record before us that there was substantial evidence to support the trial court's finding that the vein being worked by the defendants within the side lines of the Last Chance claim has its apex within the Kid claim. While Dr. John P. Buwalder, a mining engineer and geologist who examined the property involved, testified that there was very little evidence of mineralization on the 400-foot level; that there was very little alteration of rock which would be necessary to form a vein; that he took samples from the surface where the so-called vein was supposed to be and got samples from 30 cents to 75 cents and nothing higher; and that there was no vein extending through the Fairview, the Tropico and into the Kid and no place that a vein showed on the surface, this testimony merely created a conflict in the evidence which was resolved by the trial court.

A miner's vein or lode is defined in American Mining Law, volume 1, section 125, page 114, as any body of ore, quartz or other mineral bearing substance lying within the crust of the earth, bounded on each side by the country rock, greatly varying in extent across and through the country for a greater or less distance. Section 129, following, provides as follows:

"The terms 'vein, lode and ledge,' within the meaning of the mining act is whatever the miner could follow and find ore. But it is not an imaginary line without dimensions. It is not a thing without shape or form, but before it can legally and rightfully be denominated a lode or vein it must have length, width and depth. It must be capable of measurement. It must occupy defined space and be capable of identification. It is by no means always a straight line of uniform dip, or thickness, or richness of mineral matter throughout its course."

Section 138 provides that:

"The elements of a vein or lode are mineral or mineral-bearing rock and boundaries in place in the general mass of

the mountain. When one of these is well established very slight evidence may be accepted as to the existence of the other. But every seam or crevice in the rock does not constitute a vein or lode nor every ridge of stained rock its croppings. The vein or lode need be continuous only in the sense that it may be traced through the surrounding rocks. It need not have well defined walls. It may vary in direction, width, dip, and value, may split or may, in various places, be turned, curled or cupped outward, or divide into branches both in length and in depth. These branches may or may not again unite. That it is occasionally found in the general course of the vein or shoot in pockets deeper down into the earth or higher up, does not affect its character as a vein, lode or ledge.''

In section 185, page 139 of said volume, it is said that in determining either the fact or the likelihood of the extent of vein or lode a court may consider the topography of the mountain, its geological formation, together with its sands, limes, porphyry, quartzite, and granite formation, together with the mineralized rock in body and detachments; that the presence of a vein or lode may be determined by assay and analysis; that any dispute as to whether a given parcel of land is a vein or lode is a question of fact to be determined by men experienced in mining and it cannot be determined as a matter of law. It is further stated (§ 681, p. 400) that:

''A person entering within the side lines of the mining claim of another for the purpose of mining the same is *prima facie* a trespasser. The presumptive trespass may be justified by showing the existence of a vein or lode having its apex within the boundaries of a valid lode location; that such vein or lode departs from the side lines of such location on its downward course between the planes of its parallel end lines and penetrates the ground in controversy.''

Defendants, as owners of the Kid lode claim, had the right to follow the Tropico vein or lode, having its apex in said claim, on its downward course or dip through the south side line of said claim, (17 Cal.Jur., § 67, p. 382, 32 West's Cal. Dig., Mines and Minerals, Key No. 31, and cases cited.) The question whether defendants' workings within the side lines of the Last Chance claim were on a vein or lode having its apex within the Kid claim was a question of fact for the trial court's determination and where, as here, there is substantial evidence to support its findings, the judgment based

thereon cannot be disturbed on appeal. (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557] ; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.