[Civ. No. 5602.    Fourth Dist.    May 28, 1957.]

HORACE M. JONES et al., Respondents, v. RAYMOND K. STIVERS et al., Appellants.

Leonard H. McBride for Appellants.

McKinney & Ballantyne for Respondents.

MUSSELL, J.—This is an action for declaratory relief and to quiet title to spring water supplied to the real property purchased by plaintiffs from defendants. The defendants, in a cross-complaint, asked for a decree adjudging that the cross-defendants have no right, title or interest in the said spring water and that they be enjoined from further use thereof.  They further allege violation of certain building restrictions by plaintiffs, seek damages therefor, and ask that certain orders be made by the court as to the use of the property involved.  The trial court rendered judgment for plaintiffs.  Defendants and cross-complainants appeal.

Defendants Raymond K. Stivers and his wife were the owners of real property located in the foothills of Tulare County.  On January 13, 1954, they entered into an agreement with plaintiffs Jones and Newell to sell to them two parcels of

this property. Parcel A, containing 57 acres, was business property on which was located a certain business known as "Stivers Guest Ranch" and consisted of a main ranch house, with kitchen, dining room, living room and several rental rooms, four motel units, a separate building known as the recreation room and a house consisting of several units. The second parcel (C) consisted of two lots, namely, 23 and 24, of Stivers Subdivision Tract Number 198, with a home and a guest house situated on Lot 24.

The sole source of water for Parcel A was and is a spring located on land south of Parcel A, across state Highway 198, on property which was retained by Stivers and his wife. Water was and is piped from the spring to Parcel A and to the buildings thereon. The spring water is also used in one of two horse troughs located on the land retained by Stivers. The home on Lot 24 is supplied with water from a pump which is located on the Stivers property.

At the time of the sale Stivers was contemplating building the "Buckaroo Inn" immediately adjacent to the west of Parcel A's frontage on Highway 198. Stivers, during negotiations and after the escrow instructions were first signed, represented that he was going to extend the water line from (Parcel C) the subdivision water system up to the Buckaroo Inn, and at that time he would connect said water supply to the spring line so that if the buyers experienced any difficulty with the spring supply, they could then open the valve from the subdivision water line and receive water for their property.

Plaintiffs took possession of the property and subsequently sold their interest in Parcels A and C to plaintiffs Gyspert and Myna de Lespinasse. The conveyance of Parcels A and C to Jones and his wife and Newell by Stivers and his wife was executed on August 10, 1954, and recorded September 14, 1954. No mention was made in this deed of water or water rights in the spring supplying water to the two parcels involved. At the time of the sale and during negotiations between the parties, the spring was visibly connected by pipes to Parcel A and to all of the buildings thereon. It was the only source of water for Parcel A, and Stivers, prior to entering into the agreement of sale, represented to the vendees that the spring was to go with the property. The spring was located on a 200-acre tract of land owned by Stivers and this land was leased for four years to a packer who kept his horses on it and used the spring water from the two horse troughs on the property.

On November 30, 1954, the attorneys for Stivers and his wife wrote to Mr. and Mrs. Jones advising them, inter alia, that they had breached their agreements in several particulars. Subsequently, Jones and his wife sold the property to the de Lespinasses and they, having learned that there was a dispute as to the water rights, informed Jones and Newell that they would not consummate the sale until the dispute was settled.

Jones executed a note and deed of trust to insure the plaintiffs de Lespinasse that he would deliver the spring water to them or that he would drill a well. The de Lespinasses went into possession of the property on or about March 11, 1955 and on May 18, 1955, Stivers severed the pipeline leading from the spring.

The principal question to be here decided is whether the water rights in the spring involved were sold to plaintiffs by defendants. Appellants admit that ''The evidence is in conflict and dispute as to what were the intentions of the parties regarding the said spring; the plaintiffs Jones and Newell, on the one hand, claiming that they were given the right to the use of this water, and the defendants Stivers, on the other hand, declaring that it was understood and agreed upon between the parties that the water rights were not to go with the land conveyed.''

In this connection plaintiff Horace M. Jones testified that on January 10, 1954, while he and Stivers were inspecting the property, he said, ''Mr. Stivers, how about the water supply to the ranch?'' That he (Stivers) ''Pointed his hand and looked up across the road, and he said 'Right up across the road there is a spring which supplies ample water to take care of the guest ranch. It's been there for years and has never failed us yet' ''; that ''He (Stivers) also mentioned at that time, in case there was ever an emergency arose, about the water supply out of the spring, that he was going to build this Buckaroo building, and was going to extend the water line from the subdivision water supply up to the Buckaroo, what is known now as the Buckaroo Inn. And at that time he would connect our water supply onto that with a valve, whereby if we experienced any difficulty at all with the spring supply we could open this valve and get water from the subdivision water line''; that during the time that he had possession of the property and until he sold it to the de Lespinasses he received water from this spring and that during this period sufficient water was obtained therefrom.

Sarah A. Sjoberg testified that she was with Mr. Jones on January 10, 1954, and heard him ask Stivers about the water supply; that "Mr. Stivers pointed across the highway to the steep hill and said 'that is where we get the water supply. That is your supply and there is a spring there and that is the supply to the property.' "

Plaintiff Willard Newell testified that he was present when Jones asked Stivers about the water supply and that Stivers said "There was ample water. The source is a spring up on the hill" and that Stivers pointed to it. Mrs. Jones testified that "My husband asked Mr. Stivers about the water situation up there. 'Oh,' he said, 'we have plenty of water. The ranch is fed water from the spring across the way,' which he pointed to up over the hill. And Mr. Jones said, 'Well, is there plenty of water for the ranch?' And he said, 'Oh, yes, there is an ample supply of water from the spring, a wonderful spring, wonderful drinking water.' "

The trial court found, inter alia, that the pipes and cistern were in open and apparent use in supplying water to Parcel A from the spring; that Raymond K. Stivers, during his negotiations and at the time of said sale to plaintiffs, represented to them that the water from said spring constituted the water supply for the property described and purchased by said plaintiffs and that the right to the exclusive use of said water pipes and cistern passed with the said sale of said property and was a part of the consideration of the defendants for the purchase price paid by the plaintiffs for the said real property, save and except the fact that the court found that the defendants are entitled to water from said pipes to the lower horse trough and are entitled to water up to seventeen (17) head of horses from said trough from January 1st to June 30th of each year and that the spring was the only water supply in existence supplying water to the real property and dwellings thereon. These findings are supported by substantial evidence and cannot be here disturbed (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557]) and support the judgment that the defendants are entitled to the flow of water in and to one horse trough, providing that said defendants shall at no time allow more than seventeen (17) head of horses to drink from said trough on said premises between January 1st and June 30th of each year; that from July 1st to and including December 31st defendants shall have no right to any flow of water for said horse trough; and that with the exception of the right to a flow of water as limited

above, the defendants are enjoined from interfering with the above easement and from asserting any right in connection therewith and that plaintiffs have an easement across said property.

Appellants allege in their cross-complaint that the cross-defendants violated certain tract restrictions in that they converted a garage located on Parcel C to living quarters and used it as a rental unit, and also raised dogs commercially, contrary to said tract restrictions. However, the evidence shows that Stivers represented to the cross-defendants that the said garage could be rented as a guest house and Stivers agreed to convert it into a rental unit. The record also shows that Stivers made no objection to the dogs kept by Mrs. de Lespinasse. She testified in this connection that she had four dogs on the property and sold two litters of pups but that she was not engaged in the business of selling dogs. The trial court found that the cross-defendants had not violated any of the said building restrictions by reason of the conversion of the garage and that Mrs. de Lespinasse was not raising dogs commercially. These findings are sufficiently supported by the evidence.

Appellants claim that a marker designating a subdivision was wrongfully removed by the cross-defendants. However, the marker was shown to have been on Lot 24, purchased by the vendees, and not on the road area as claimed by Stivers.

It is next claimed by Stivers that the cross-defendants strung a telephone line across his property between the two parcels of land purchased by the cross-defendants without obtaining his consent or permission and that the trial court should have ordered the cross-defendants to remove said line. In this connection the evidence shows that Jones and Newell expended time and money in erecting and installing a private telephone line from Parcel A across Stivers' land to Parcel C and that this was done at Stivers' suggestion and with his express permission. The court found in this connection that plaintiffs have an easement across the Stivers' property for said telephone line.

Appellants further claim that they did not sell or transfer the right to use the name "Stivers Guest Ranch" or "Stivers Ranch" and that they were damaged by the unauthorized use by plaintiffs of said names. However, the court found in this connection that the defendants did not transfer to plaintiffs the right to use these names, except for a reasonable period

and that such period had expired and that plaintiffs should be enjoined from using any such names.

The findings of the trial court with respect to the matters alleged in the cross-complaint and in the complaint appear to be supported by substantial evidence and are binding upon us. The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied June 24, 1957, and appellants' petition for a hearing by the Supreme Court was denied July 24, 1957.